COMMONWEALTH *vs.* CARL M. ANTONELLI.

Barnstable. January 7, 1963. — March 1, 1963.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, SPIEGEL, & REARDON, JJ.

*Escape. Penal Institution. Imprisonment. Officer.*

A guard in charge of prisoners at a county house of correction, appointed by the sheriff of that county under G. L. c. 126, § 16, was an "officer" within the purview of that section and of c. 268, § 16, punishing the escape of a prisoner of a penal institution "from the custody of any officer thereof." [520–521]

A prisoner in a house of correction of a county who, pursuant to a verbal order of the deputy master thereof, accompanied a guard thereof to another county for the purpose of getting sawdust for use at the house of correction and while on private property in the other county ran away

from the work detail supervised by the guard was then in the lawful custody of the guard as an officer of the house of correction within G. L. c. 268, § 16. [521–522]

INDICTMENT found and returned on October 3, 1961, and afterwards amended.

The case was reported by *Taveira,* J.

*Robert W. MacDonald,* Assistant District Attorney, for the Commonwealth.

*Milton R. Silva* for the defendant.

SPALDING, J. In April, 1961, the defendant was sentenced to the Barnstable County House of Correction "to be confined at hard labor in and within the precincts of said House of Correction for the term of one year and to stand committed according to said sentence."[1] On June 23, 1961, the defendant was verbally ordered by the deputy master of the Barnstable County House of Correction to accompany prison guard Philip Green to Middleboro, in the county of Plymouth, for the purpose of getting a truck load of sawdust for use at the Barnstable County House of Correction. The guard was employed at the Barnstable County House of Correction and was appointed by the sheriff under G. L. c. 126, § 16. The guard "did not have in his possession any written authorization or other form of legal process . . . for the conveyance of the defendant from Barnstable County to Plymouth County." The defendant accompanied the guard to Middleboro and while on private property (Shurtleff's Saw Mill) he ran away from his work detail, which was supervised by the prison guard. The defendant was apprehended in New York on October 25, 1961, whence he was returned to the Barnstable County House of Correction.

Subsequently an indictment was returned charging that the defendant, "being a prisoner in . . . the Barnstable County House of Correction and being lawfully in the custody of an officer of said institution did escape from the custody of said officer." This offence is defined in G. L. c. 268,

[1] At the same time similar sentences on two other charges were imposed; all sentences were to run concurrently.

§ 16.   Pursuant to leave granted at the time of arraignment, the defendant filed a plea in abatement supported by an affidavit setting forth the facts outlined above.   In this plea the defendant assails the indictment on the ground that no offence was committed under G. L. c. 268, § 16, for the reasons (1) that his departure was not from any penal institution or from land appurtenant thereto; (2) that he was not in the custody of an officer of such an institution; and (3) that he was not being conveyed to or from a penal institution.

The judge, being of opinion that the questions of law presented by the plea in abatement were so important or doubtful as to require the decision of this court, reported the case. G. L. c. 278, § 30A,[2] inserted by St. 1954, c. 528.   We do not pause to consider the Commonwealth's suggestion that the questions sought to be raised by the defendant should have been raised at the trial on the merits rather than by a plea in abatement attacking the indictment.   The plea was heard on a statement of agreed facts and the court had before it all the facts relevant to the questions sought to be raised that it would have had after a trial on the merits.   These questions have been fully argued by both sides, and we shall proceed to a discussion of them.

General Laws c. 268, § 16, defines the offence of escape as follows: "A prisoner who escapes or attempts to escape from any penal institution . . . or from land appurtenant thereto, or from the custody of any officer thereof or while being conveyed to or from any such institution . . . shall be punished."   The defendant was not charged with having escaped from a penal institution or from land appurtenant thereto.   Rather he was charged with having escaped from the custody of an officer of a penal institution.   The defendant argues that the guard who accompanied him was not an

---

[2] Section 30A reads: "If, prior to the trial of a person in a criminal case in the superior court, a question of law arises which, in the opinion of the presiding justice, is so important or doubtful as to require the decision of the supreme judicial court thereon before trial, in the interest of justice, he may report the case so far as necessary to present the question of law arising therein; and thereupon the case shall be continued for trial to await the decision of the supreme judicial court."

officer within the meaning of the statute. We are of opinion that this contention cannot be sustained. General Laws c. 126, § 16, authorizes the jailer, master or keeper of a house of correction (which may be the sheriff or his deputy) to "appoint subordinate assistants, employees and officers." We are of opinion that a guard in charge of supervising prisoners must be regarded as an officer within the purview of this section, and that he was likewise an officer within the intendment of G. L. c. 268, § 16, under which the indictment was drawn. In support of his contention that the guard was not an officer the defendant cites *Brown* v. *Russell,* 166 Mass. 14, 25–26, *Attorney Gen.* v. *Drohan,* 169 Mass. 534, and *Attorney Gen.* v. *Tillinghast,* 203 Mass. 539, 543–544. These decisions recognize the distinction between an office and employment. It may well be that for certain purposes the guard here might not be classed as an officer as that word has been defined in the above decisions. But the question here is not whether the guard was for all purposes an officer; rather the question is the narrower one, that is, whether he was an officer within the meaning of G. L. c. 268, § 16, and c. 126, § 16. Obviously, in the running and management of a jail or house of correction, the master or keeper must of necessity delegate to others the matter of guarding prisoners. The construction for which the defendant contends would mean that G. L. c. 268, § 16, would be violated if a prisoner escaped from the custody of a master or deputy master of a house of correction or one holding one of the superior offices of the institution, but that he would commit no offence if he escaped from the custody of a guard who was carrying out the orders of his superior. We decline to place such an interpretation on the statute.

In order for the defendant to be guilty of escape, the custody of the officer must be lawful. *Commonwealth* v. *Farrell,* 5 Allen, 130, 131. See annotation in 56 A. L. R. 666, 667–669. The defendant contends that it was not, and directs our attention to certain statutes which authorize the employment of prisoners in correctional institutions in cer-

tain designated places outside the institutions.[3]   Our attention is also directed to statutes which authorize the removal of prisoners from a jail or house of correction in certain emergencies.[4]   It is argued that these provisions demonstrate that the removal of prisoners to places outside of the institution where they are confined is limited and that in the absence of express statutory authority it may not be done.   That there is some force in this argument cannot be denied, but we are of opinion that it cannot prevail.   It is apparent from the statutes set forth in footnote 3 that they were designed in part to prevent the farming out of convict labor except in certain specified instances.   But these statutes evince an intent to permit prisoners to work outside their place of imprisonment where the objective is of a public nature such as reclaiming wasteland, raising produce for public institutions, and development of State forests.   G. L. c. 127, § 83.   They do not forbid activities of the sort here involved.   It would be strange if a prisoner would be in the lawful custody of an officer while planting potatoes for the institution in which he was incarcerated but would not be in such custody while procuring sawdust for the institution. We hold, therefore, that the defendant was in the lawful custody of an officer of the Barnstable County House of Correction at the time of his escape, and that the escape constituted an offence under G. L. c. 268, § 16.

It follows that the defendant's plea in abatement must be overruled.

*So ordered.*

---

[3] See G. L. c. 127, § 49, as amended through St. 1955, c. 770, § 34, which prohibits, with certain exceptions, the employment of prisoners ''outside the precincts of the place of his imprisonment'' for private persons.   This section permits the employment of prisoners ''on any part of the premises of the institution or in the care of public lands and buildings'' and provides that a prisoner who escapes from ''such premises, land or building shall be deemed to have escaped from the institution of which he is an inmate.''

Section 83 of c. 127 authorizes the employment of prisoners ''in the reclamation of waste places and in cultivating lands for raising produce to be used in public institutions, and in the reforestation, maintenance or development of state forests.''

See also G. L. c. 127, § 84.

[4] G. L. c. 126, § 26 (removal in case of pestilence); G. L. c. 126, § 27 (removal in case of fire).