## PEOPLE v LAMONT CRAWFORD

1. WITNESSES—CRIMINAL LAW—EXPERT WITNESSES—PSYCHOLOGISTS—COMPETENCE TO STAND TRIAL.

    A psychologist is qualified to evaluate a criminal defendant's competence to stand trial and also to give expert testimony concerning the defendant's competence at a competency hearing.

2. WITNESSES—CRIMINAL LAW—EXPERT WITNESSES—COMPETENCE TO STAND TRIAL—PSYCHIATRISTS—STATUTES.

    A statute which provides for an evaluation of a defendant's competence to stand trial where there is a showing that he may be incompetent does not require that such evaluation be made by, and that expert testimony concerning competence be given by, a psychiatrist, even though the statute employs the words "psychiatry" and "psychiatric" (MCLA 767.27A; MSA 28.966[11]).

3. WITNESSES—CRIMINAL LAW—EXPERT WITNESSES—COMPETENCE TO STAND TRIAL—PSYCHOLOGISTS—CENTER FOR FORENSIC PSYCHIATRY.

    Evaluation of a defendant's competence to stand trial must be made by a person qualified to offer in-court testimony on the subject and that person must be associated with the Center for Forensic Psychiatry or other certified diagnostic facility; therefore, a psychologist associated with the Center for Forensic Psychiatry was qualified to evaluate and testify concerning a defendant's competence to stand trial (MCLA 767.27A; MSA 28.966[11]).

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 21 Am Jur 2d, Criminal Law §§ 65, 69.
    Investigation of present sanity to determine whether accused should be put, or continue, on trial. 142 ALR 961.
    Validity and construction of statutes providing for psychiatric examination of accused to determine mental condition. 32 ALR2d 434.
[4, 5] 27 Am Jur 2d, Escape, Prison Breaking, and Rescue §§ 1, 18.
[6] 27 Am Jur 2d, Escape, Prison Breaking, and Rescue § 12.

4. Witnesses—Criminal Law—Escape—Hearsay—Harmless Error.

Admission of testimony by two witnesses, in a trial for prison escape, regarding the defendant's absence from his cell and his assigned area at the time of the escape, which testimony was based upon reports prepared by others, was harmless error even though it was hearsay, where the witnesses also testified to the subsequent search of the prison in which both witnesses participated and which failed to locate the defendant.

5. Escape—Statutes—Voluntary Absence—Sufficiency of Proof —Criminal Law.

The prison escape statute requires only that an escape be shown and that the defendant was not released by due process of law, and once a defendant raises an affirmative defense such as the unlawfulness of the initial incarceration, or duress, the burden is on the people to disprove that defense; therefore, a defendant must first raise the issue of his involuntary absence before the people are required to present evidence of the voluntariness of the defendant's absence, and where the issue was not raised by the defendant, a showing only of defendant's unlawful absence from prison was sufficient to show a violation of the statute (MCLA 750.193; MSA 28.390).

6. Escape—Elements of Offense—Submission to Jury—Criminal Law—Statutes.

A case was properly submitted to the jury in a trial for prison escape where it was shown that the defendant was incarcerated at Jackson prison, that his sentence had not expired, that he had not been lawfully released, and that he was picked up in Detroit and returned to prison, thus supplying proof on each material element of the offense charged (MCLA 750.193; MSA 28.390).

Appeal from Jackson, Russell E. Noble, J. Submitted December 8, 1975, at Lansing. (Docket No. 22987.) Decided January 8, 1976.

Lamont Crawford was convicted of prison escape. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Bruce A. Barton,* Prosecuting Attorney, and *James M. Justin,* Assistant Prosecuting Attorney, for the people.

*Leonard Esquina, Jr.,* Assistant State Appellate Defender, for defendant.

Before: McGREGOR, P. J., and T. M. BURNS and N. J. KAUFMAN, JJ.

McGREGOR, P. J. Defendant, Lamont Crawford, was convicted by a jury of escape from prison (MCLA 750.193; MSA 28.390) and subsequently sentenced to a term of 1 to 5 years, to commence at the expiration of his present sentence. Defendant now appeals as a matter of right.

## I.

Defendant's first assignment of error relates to the trial court's determination that defendant was competent to stand trial. On January 9, 1974, the trial court issued an order committing defendant to the Center for Forensic Psychiatry for an evaluation of his competency to stand trial. Following that evaluation, the forensic center submitted a report stating that, in the opinion of its examiners, the defendant was competent to stand trial. This report was signed by Newton L. P. Jackson, Jr., a Ph.D. in psychology, and Leon J. Quinn, M.D., a psychiatrist. A competency hearing was held on October 11, 1974, at which time Dr. Jackson was offered by the prosecution as an expert witness. The trial court, over objection, allowed Dr. Jackson to testify concerning defendant's competency. No additional experts were offered at the hearing by either the prosecution or the defense. Prior to trial, the trial court ruled that the defendant was competent to stand trial.

Defendant contends that he was deprived of due process of law and his statutory rights because (1) the trial court erroneously allowed Dr. Jackson to

give expert testimony concerning defendant's competency, and (2) the defendant's competency evaluation at the forensic center was inadequate because it was primarily conducted by Dr. Jackson.

The two grounds of error advanced by the defendant are closely related. If Dr. Jackson was not qualified to evaluate the defendant's competency, then, of course, he would also not be qualified to offer in-court expert testimony on that subject. Likewise, if he was unqualified to offer the expert testimony, he would similarly be unqualified to make the evaluation. Thus, resolution of these issues essentially involves the question of whether an experienced clinical psychologist is sufficiently qualified to evaluate the competency of a defendant and to give expert testimony in regard thereto.

Defendant first argues, under the general common law principles regarding expert testimony, that only a psychiatrist is qualified to give expert testimony concerning a defendant's competency to stand trial.[1] We disagree.

In *People v Hawthorne,* 293 Mich 15; 291 NW 205 (1940), five Justices of our Supreme Court would have allowed a well-qualified psychologist to testify on the issue of a defendant's insanity. This case has been followed in other jurisdictions, using an abuse of discretion standard. See *Jenkins v United States,* 113 US App DC 300; 307 F2d 637 (1962), and *State v Padilla,* 66 NM 289, 298; 347 P2d 312 (1959), that Court stating:

"We adopt the modern trend of authority in allowing a properly qualified psychologist to give his opinion as an expert as to the result of tests made by him, but that such testimony should be limited to that which the witness is qualified to offer on the basis of his profes-

[1] The definitional difference between a psychiatrist and a psychologist is the psychologist's lack of medical training.

sional training and experience and which he can substantiate by evidence that would be acceptable to recognized specialists in the same field." (Citations omitted.)

While the *Hawthorne* case involved the issue of a defendant's insanity, we believe that its holding can be extended to the issue of a defendant's competency to stand trial. Both issues require an expert witness to determine the mental state of a defendant and then to decide whether that mental state meets the criteria of an established legal standard. In fact, where the issue is insanity, a much stronger case can be made for allowing only psychiatrists to give expert testimony on the subject. This is so because present legal standards regarding insanity require the existence of a mental disease or defect, whereas the legal standards concerning competency do not necessarily require the same. Moreover, insanity requires the expert to determine the defendant's mental state at some time in the past (when the crime was committed), while competency to stand trial only requires the expert to determine the defendant's present mental state. Consequently, we hold under common law principles that a psychologist is qualified to evaluate a defendant's competency to stand trial and also to give expert testimony concerning the same at a competency hearing.[2]

Defendant further contends that, even if we decide that a psychologist is so qualified under common law principles, the statutory scheme pertaining to competency nevertheless requires that

[2] *Compare People v Skowronski,* 61 Mich App 71; 232 NW2d 306 (1975), in which our Court held that a social worker was not qualified to evaluate the psychological tests given a defendant and thus was deemed incompetent to testify at a competency hearing. However, a social worker, unlike a psychologist, does not have the training or expertise to administer and evaluate psychological tests and, therefore, that case is distinguishable from the present case.

the evaluation be made only by psychiatrists. The statute in question, MCLA 767.27A; MSA 28.966(11), provides in part as follows:

"(3) Upon a showing that the defendant may be incompetent to stand trial, the court shall commit the defendant in the criminal case to the custody of the *center for forensic psychiatry* or to any other diagnostic facility certified by the department of mental health for the *performance of forensic psychiatric evaluation.* The commitment shall be for a period not to exceed 60 days. Within that period the center or other facility shall prepare a diagnostic report and recommendations which are to be transmitted to the committing court.

"(4) Upon receipt of the diagnostic report and recommendations the sheriff shall immediately return the defendant to the committing court and the court shall immediately hear and determine the issue of competence to stand trial. The diagnostic report and recommendations shall be admissible as evidence in the hearing, but not for any other purpose in the pending criminal proceedings.

\* \* \*

"(6) If at any time within 18 months of the entry of the order of commitment entered under section (5) the defendant has regained competence to stand trial, in the opinion of the department of mental health, it shall certify its opinion, together with a detailed *psychiatric report,* to the committing court and shall return the defendant to the control of that court. The return shall be made by the sheriff at the request of the department. The court shall immediately hear and determine the question of competence to stand trial. The certificate and *psychiatric report* shall be admissible as evidence in the hearing, but not for any other purpose in the pending criminal proceedings." (Emphasis added.)

Defendant argues that the above statute, employing as it does the words "psychiatry" and "psychiatric", mandates a finding that only psychiatrists are qualified to evaluate and give expert

testimony concerning competency. Again, we disagree.

Some light is shed on this issue by the recent Supreme Court case of *People v Blocker,* 393 Mich 501; 227 NW2d 767 (1975), where the majority opinion found that the statutory procedure was not properly invoked because no evidence of incompetency had been submitted to the trial court. However, the dissenting opinion, by Justice SWAINSON, after disposing of that initial hurdle, went on to discuss the above-quoted portions of the competency statute. He stated:

"The statutory procedure is very explicit and designed to guarantee that a questionably incompetent defendant is examined by qualified experts. The fundamental nature of the right involved demands that an evaluation of a defendant's competence be made by a person who would be qualified to offer in court expert testimony on the subject. The Legislature has further refined this right by requiring that the expert be associated with 'the center for forensic psychiatry or * * * any other diagnostic facility certified by the department of mental health for the performance of forensic psychiatric evaluation'. MCLA 767.27A(3); MSA 28.966(11)(3). The court's action herein failed to afford Blocker with either his basic or his statutory rights to an expert evaluation." 393 Mich 501, 518–519.

Thus, under Justice SWAINSON's interpretation of the statute, there is statutory compliance if two factors are established: First, the evaluation of a defendant's competence must be made by a person who would be qualified to offer in-court testimony on the subject, and secondly, that expert must be associated with the Center for Forensic Psychiatry or another diagnostic facility certified by the Department of Mental Health.

In the present case, both factors have been

established. We have previously decided that a psychologist is qualified to evaluate a defendant's competence and to offer in-court expert testimony on that subject. Additionally, Dr. Jackson was associated with the Center for Forensic Psychiatry.

Furthermore, it appears that the Legislature enacted the statute for the purpose of implementing a defendant's constitutional right not to be tried or convicted while incompetent to stand trial. In so doing, it safeguarded that right by requiring that the necessary tests be performed only at the forensic center or another diagnostic facility which has met the standards established by the Department of Mental Health. It does not, however, state who is or who is not a qualified expert at one of these approved facilities. Thus, it would seem that the Legislature or the Department of Mental Health, by certifying a facility, has made a determination that the staffs of those facilities are qualified to conduct the evaluation.

We think that the use of the words "psychiatry" and "psychiatric" in the statute does not change this result. We conclude that the Legislature never intended to place such a restriction on the qualifications of the examining personnel if they were part of a certified facility. Thus, we interpret the use of those words to denote where and how an evaluation is to be performed and not by whom it is to be performed. The new Mental Health Code supports this interpretation. The language of that statute[3] changes the wording from "a psychiatric evaluation" to "an examination by personnel of * * * the center for forensic psychiatry". We view this change as an attempt by the Legislature to clarify the wording of the statute in order to make it correspond more closely to the legislative intent

---

[3] MCLA 330.2026; MSA 14.800(1026).

and thereby avoid the precise problem presented here. Nor do we believe that this interpretation violates either a defendant's constitutional or statutory rights. A well-qualified clinical psychologist, like Dr. Jackson, is certainly competent to perform the necessary tests. Moreover, Dr. Jackson was under the supervision of a psychiatrist at the center. His findings were also reviewed and analyzed by Dr. Quinn, the psychiatrist who joined Dr. Jackson in the signing of the report. Such procedures must result in a fair and accurate assessment of a defendant's competency and, thus, fully safeguard the defendant's due process rights.

## II.

Defendant next claims that the trial court committed reversible error by not granting defense counsel's motion to strike the testimony of two prosecution witnesses.

The first witness was one Richard Dix, a correction specialist in charge of the dining area for the trustee division at the prison. On direct examination, Dix testified that defendant was absent from his assigned area on the date of the alleged escape and that he subsequently took part in the search for the defendant. On cross-examination, however, it became apparent that the witness, in concluding that the defendant was absent from his assigned area, was testifying entirely on the basis of certain "detail" reports prepared by other prison officials and not from his own personal knowledge.

The second witness was one Robert Bishop, a sergeant in the control center of the trustee division. On direct examination, he testified that the defendant was not in his cell at the time of the escape and that, as a result, a search was ordered and the State Police, as well as local authorities,

were notified of the probable escape. However, cross-examination of this witness also disclosed that his testimony regarding defendant's absence from his cell was also based upon reports made by others. In this case, the reports relied upon were "count" sheets prepared by the prison guards. Defendant claims that, since these witnesses, in so testifying, were speaking only on the faith of the reports prepared by others, their testimony should have been stricken as hearsay.

Assuming the testimony of these witnesses as to the matters contained in the reports was hearsay[4] and inadmissible,[5] their remaining testimony still should not have been stricken. This testimony, which concerned the search of the prison, and the fact that it failed to locate the defendant, was based upon their personal knowledge and therefore admissible. Based upon this admissible testimony and the other admissible evidence adduced at trial, we conclude that the admission of the hearsay testimony was harmless beyond a reasonable doubt. These witnesses were well cross-examined and their reliance on the reports was made clear, as well as their own lack of first-hand knowledge concerning the contents of those documents. Moreover, the contents of those reports were clearly collateral to the issues at trial, especially once it had been established that the search of the prison failed to disclose the defendant's presence and that the defendant was subsequently

---

[4] It could conceivably be argued that these reports were admissible for the non-hearsay purpose of showing their effect upon the reader, *i.e.,* that, as a result of reading these reports, the two witnesses conducted a search for the defendant. *See* McCormick, Evidence (2d ed), § 249, p 589.

[5] Even if the reports have not been destroyed, they probably would not have been admissible under the business records exception, since they did not possess the hallmarks of trustworthiness required by *People v Kirtdoll,* 391 Mich 370, 385–390; 217 NW2d 37 (1974).

picked up more than three months later, from a police station in Detroit.

### III.

Defendant also contends that the trial court erred when it denied defendant's motion for a directed verdict. First, he argues that the failure of the prosecution to present competent evidence on the voluntariness of defendant's absence from the prison was a failure to prove an essential element of the crime. The pertinent part of the statute reads as follows:

"Any person, being imprisoned in any prison of this state for any term, who shall break prison and escape, or break prison though no escape be actually made, or shall escape, or shall leave the prison without being discharged from the prison by due process of law, or shall attempt to break prison or escape therefrom, shall be guilty of a felony, punishable by further imprisonment for not more than 5 years, such term of further imprisonment to be served after the termination, pursuant to law, of any sentence or sentences then being served."

Thus, the statute merely requires that an escape be shown, and that the defendant was not released by due process of law. While the prosecution did not present an overwhelming case against the defendant, it did present some evidence on this element of the offense charged.

While no cases have decided the precise issue of voluntariness raised here, several cases furnish guidance on this issue. These cases hold that, once a defendant raises an affirmative defense such as the unlawfulness of the initial incarceration, or duress, then the burden of proof is on the people to disprove that defense. See *People v Hurst,* 59

Mich App 441; 229 NW2d 492 (1975), *People v
Luther,* 394 Mich 619; 232 NW2d 184 (1975). See
also *People v Noble,* 18 Mich App 300; 170 NW2d
916 (1969), which holds that the escape statute
does not require a specific intent.

Therefore, relying upon the rationale of these
cases, we hold that a defendant must first raise the
issue of his involuntary absence before the people
are required to present evidence of voluntariness.
In the present case, since defendant did not raise
this issue, the people's evidence showing only the
defendant's unlawful absence from the prison was
sufficient.

Defendant still insists, however, that the trial
judge erred in denying his motion for directed
verdict, since the people's proofs made no showing
that defendant was ever outside the custody of
either the corrections department or another law
enforcement agency.

Excluding the hearsay evidence improperly ad-
mitted, and taking the remaining evidence in the
light most favorable to the prosecution, it was
shown that defendant was incarcerated at Jackson
prison, that his sentence had not expired, that he
had not been lawfully released, and that he was
picked up from a police station in Detroit and
returned to prison. We find that this evidence was
sufficient, either directly or circumstantially, to
supply proof on each material element of the
offense charged. Consequently, the trial judge did
not commit error by submitting this case to the
jury for determination of whether such evidence
established guilt beyond a reasonable doubt.

## IV.

We have carefully considered the defendant's

remaining assignments of error and find that they do not warrant the reversal of defendant's conviction.

Affirmed.