COMMONWEALTH *vs.* VINCENT GIORDANO.

Franklin.    June 15, 1979. — October 31, 1979.

Present: KEVILLE, ARMSTRONG, & DREBEN, JJ.

*Escape. Imprisonment.*

At the trial of a defendant charged with escape from a house of correction to which he had been transferred from Rhode Island under the Interstate Agreement on Detainers, evidence as to the regularity of the defendant's transfer under the Interstate Agreement was sufficient in the circumstances to prove "lawfulness of custody." [591]

INDICTMENT found and returned in the Superior Court on May 31, 1977.

The case was tried before *Cross,* J.

*William C. Newman* for the defendant.

*Stephen R. Kaplan,* Assistant District Attorney, for the Commonwealth.

ARMSTRONG, J. The defendant appeals from his conviction of an escape on May 8, 1977, from the Franklin County house of correction. His principal contention on appeal is that the Commonwealth failed to sustain its burden of proving that he was held in lawful custody at the time of his admitted departure without permission from the institution. There was evidence that the defendant had been in custody at the Adult Correctional Institution at Cranston, Rhode Island, and that on May 4, 1977, two Massachusetts State troopers transported the defendant from the Rhode Island institution to the Franklin County house of correction, the transfer being effectuated under the Interstate Agreement on Detainers, St. 1965, c. 892, § 1, reprinted in Mass. Gen. Laws Ann., c. 276, app., at 261 et seq. (West 1972); Pub.L. No. 91-538,

84 Stat. 1397 (1970). One of the troopers carried with him copies of a form evidencing his authority to receive custody of the defendant, as required by Art. V, (b), (1) of the agreement. He left one such copy at the Adult Correctional Institution at Cranston when he received the defendant, and he left another copy, which was a photocopy, at the Franklin County house of correction, where it was kept on file in the regular course of business as the institution's record of the authority by which the defendant was held in custody. At the time of reception a correctional officer filled out a "standard officer's report card," or "booking card," in which personal data concerning the defendant and information concerning the purpose of his detention was recorded; this card was signed by the defendant and kept on file. The making and the filing of the "booking card" were both done in the regular course of business.[1] The escape took place four days later, before commencement of trial on the charges pending against the defendant.

The defendant contends that the judge erred in denying his motion for a directed verdict, because the Commonwealth only introduced evidence of the regularity of the defendant's transfer under the Interstate Agreement on Detainers from Rhode Island to Massachusetts but failed to prove the lawfulness of the underlying custody in Rhode Island, as it could have done by, for example, introducing in evidence certified copies of a conviction,

---

[1] The defendant objected to the admission in evidence of the detainer agreement authority form on the sole ground that an original, rather than a photocopy, should have been offered; but the photocopy was in fact the original, so far as the records of the house of correction were concerned. See G. L. c. 4, § 7, Twenty-sixth, "Public Records," as amended through St. 1977, c. 691, § 1. No question was raised as to its authenticity. Compare Fed.R.Evid. 1001(4) and 1003. The defendant also objected to the admission of the booking card, on the sole ground that it listed the offenses for which he was to stand trial; assuming the objection to be good, we note that the judge's instructions to the jury appropriately limited the purposes for which the card could be considered.

sentence and mittimus pursuant to which the defendant was held in the Adult Correctional Institution at Cranston.

Lawfulness of custody is, of course, an element of the crime of escape, *Commonwealth* v. *Antonelli*, 345 Mass. 518, 521 (1963), and as such falls within the Commonwealth's burden of proof. However, the Commonwealth does not for this purpose have to show that the custody is invulnerable to attack by a prisoner following proper legal procedures; "[a]n escape is not justified or excused by reason of informality or irregularity in the process of commitment [or] arrest . . .; and if, in such a situation, [the prisoner] takes no such [legal] steps but wrongfully frees himself he is guilty of an escape." Perkins, Criminal Law 503 (2d ed. 1969). The Commonwealth sufficiently proved "lawfulness of custody" in this sense by proving, although somewhat informally, that the defendant was held at the Franklin County house of correction pursuant to a transfer of custody from the Adult Correctional Institution at Cranston under the Interstate Agreement on Detainers. That agreement expressly requires that a prisoner transferred under the act "be held in a suitable jail or other facility regularly used for persons awaiting prosecution." Art. V, (*d*). We think that, so far as the courts of this Commonwealth are concerned, a presumption of regularity attended the circumstances of the defendant's imprisonment in Rhode Island, cf. *Michigan* v. *Doran*, 439 U.S. 282, 289-290 (1978), and considerations of comity, as well as common sense, preclude the defendant from testing the lawfulness of his imprisonment in Rhode Island by escaping from custody in Massachusetts.[2]

---

[2] We caution that we do not by our ruling in this case hold that the Commonwealth may generally in escape prosecutions rely on the presumption of regularity of official actions to avoid proving the lawful basis of the defendant's imprisonment. At least one jurisdiction has sanctioned that approach, see *People* v. *Hurst*, 59 Mich. App. 441, 445-446 (1975); *People* v. *Crawford*, 66 Mich. App. 581, 591-592 (1976) (although the rationale is differently stated), but it has been rejected

Commonwealth *v.* Giordano.

The defendant's remaining arguments are without merit. His motions for withdrawal of counsel, for an additional continuance, and for a further voir dire of certain jurors were all addressed to the sound discretion of the judge, and his denials were fully justified in the circumstances shown by the record. The record indicates that the defendant, did not raise at trial the contention now made that exhibits six, seven and eight should have been sanitized. If his objection to exhibit five is treated as having suggested sanitizing that exhibit, the matter was adequately covered by the judge's cautionary instructions (see n.1).

*Judgment affirmed.*

in *Harding* v. *State*, 248 Ark. 1240, 1243-1244 (1970). On the subject of presumptions in criminal cases and the burden of proof, see *Commonwealth* v. *Pauley*, 368 Mass. 286 (1975); *Commonwealth* v. *Kostka*, 370 Mass. 516, 525-537 (1976). In the instant case, the defendant did not suggest as part of his case that his imprisonment in either Rhode Island or Massachusetts was unlawful; to the contrary, his counsel conceded (after the denial of his motion for a directed verdict) that his transfer to Massachusetts under the Interstate Agreement was voluntary (see Art. III, [a]), which would operate under Art. III, (e), as a consent to custody in Massachusetts and to his return to prison in Rhode Island after final disposition of charges in Massachusetts.