**Vincent GIORDANO, Petitioner, Appellant,**

v.

**Michael FAIR, et al., Respondents, Appellees.**

No. 82–1495.

United States Court of Appeals, First Circuit.

Argued Dec. 7, 1982.

Decided Jan. 5, 1983.

Ann Lambert Greenblatt, Boston, Mass., for petitioner, appellant.

Linda G. Katz, Asst. Atty. Gen., Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., Stephen R. Delinsky, Asst. Atty. Gen., Chief, Criminal Bureau, and Barbara A.H. Smith, Asst. Atty. Gen., Chief, Criminal Appellate Division, Boston, Mass., were on brief, for respondents, appellees.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Vincent Giordano appeals from the district court's denial of his petition for habeas corpus pursuant to 28 U.S.C. § 2254. We affirm the district court's judgment.

In 1977 while Giordano was incarcerated at the Adult Correctional Institution at Cranston, Rhode Island, he requested under Article III of the Interstate Agreement on Detainers, Mass.Gen.Laws ch. 276 App. § 1–1 (hereafter IAD) to be brought to Massachusetts to stand trial on charges pending against him in Massachusetts. On May 4, 1977, he was transported to Massachusetts under the authority of the IAD and placed in the custody of the Franklin County House of Correction at Greenfield. Four days later Giordano, along with four other inmates, was discovered missing. A hole was found in the wall of the jail. On May 10, 1977, Giordano surrendered to the Cranston police. He was returned to Massachusetts and indicted under the provisions of Mass.Gen.Laws ch. 268, § 16 (1981 Supp.), the Commonwealth's general escape statute.

During the escape trial in Massachusetts Superior Court, the Commonwealth introduced into evidence the IAD form authorizing Giordano's custody in Massachusetts. The state did not, however, offer any evidence of Giordano's Rhode Island conviction. In a motion for a directed verdict of acquittal, Giordano argued that the lack of such evidence constituted a failure of proof of an essential element of the crime of escape. The superior court disagreed and

denied the motion. He was then convicted and sentenced to a seven to ten year prison term.

On appeal, the Massachusetts Appeals Court rejected Giordano's argument that the lack of proof of his Rhode Island conviction constituted a fatal flaw in the state's case. *Commonwealth v. Giordano* (1979) 8 Mass.App. 590, 395 N.E.2d 896, *cert. denied,* 446 U.S. 968, 100 S.Ct. 2948, 64 L.Ed.2d 828 (1980). The court noted that while lawfulness of custody is an element of the crime of escape, 8 Mass.App. at 590, 395 N.E.2d at 897, the Commonwealth sufficiently proved lawfulness by introducing evidence that Giordano was held in Massachusetts pursuant to the IAD at the time of his escape.

After the denial of further review by the Massachusetts Supreme Judicial Court, 1980 Mass.Adv.Sh. 135, and of a petition for certiorari by the United States Supreme Court, 446 U.S. 968, 100 S.Ct. 2948, 64 L.Ed.2d 828 (1980), Giordano filed the present petition for habeas corpus before the United States District Court for the District of Massachusetts. Giordano argued that proof of the lawfulness of his Rhode Island conviction was an essential element of the crime of escape in Massachusetts and that his conviction without the introduction of additional —or, as he would have it, "any"—evidence pertaining to that element violated his constitutional right to due process. He further claimed that the appeals court violated the Constitution by holding that the IAD form created a mandatory presumption that the Rhode Island imprisonment was lawful and that the court's opinion unconstitutionally expanded the scope of the statute. The district court rejected these arguments in an opinion recited from the bench. Giordano then appealed from that judgment to this court.

■ Giordano was indicted and convicted under Mass.Gen.Laws ch. 268, § 16 (1981

Supp.).[1] Massachusetts courts have long held that lawfulness of custody is an element of the crime of escape under that statute and its predecessors. *E.g., Commonwealth v. Antonelli,* 345 Mass. 518, 188 N.E.2d 478 (1963); *Commonwealth v. Farrell,* 87 Mass. (5 Allen) 130 (1862). Ordinarily, the element of lawful custody is proven by evidence of a copy of the conviction or a mittimus. Giordano concludes from this that proof of the validity of the underlying conviction is essential to the state's case. He further contends that the appeals court, by concluding that the introduction of the IAD form satisfied the state's burden of establishing the lawfulness of custody, created a mandatory presumption of the validity of the underlying conviction. He argues that such a presumption violates the constitutional prohibition against shifting the burden of proof against the defendant, *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), and violated the IAD itself, an act whose interpretation is a question of federal law. *Cuyler v. Adams,* 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981).

■ We think that Giordano misreads the state court's opinion. The appeals court stated that the IAD form was evidence that Giordano was lawfully held at the Franklin County House of Correction. The court then went on to say,

We think that, so far as the courts of this Commonwealth are concerned, a presumption of regularity attended the circumstances of the defendant's imprisonment in Rhode Island, *cf. Michigan v. Doran,* 439 U.S. 282, 289–290 [99 S.Ct. 530, 535–536, 58 L.Ed.2d 521] (1978), and considerations of comity, as well as common sense preclude the defendant from testing the lawfulness of his imprison-

---

1. The statute states:

    A prisoner who escapes or attempts to escape from any penal institution or from land appurtenant thereto, or from the custody of any officer thereof or while being conveyed to or from any such institution, or fails to return from temporary release granted under the provisions of section ninety A of chapter one hundred twenty-seven, may be pursued and recaptured and shall be punished by imprisonment in the state prison for not more than ten years or by imprisonment in a jail or house of correction for not more than two and one half years.

ment in Rhode Island by escaping from custody in Massachusetts.

8 Mass.App. at 592, 395 N.E.2d at 898.

We do not read this language as stating that the IAD form created a mandatory presumption that the Rhode Island confinement was lawful. By citing *Michigan v. Doran*, the appeals court suggested that it harbored doubts as to the relevance and appropriateness of a Massachusetts court's inquiring into the legality of the Rhode Island imprisonment. In *Doran* the Supreme Court held that an asylum state could not review whether an extraditing state had probable cause to seek an extradition. Similarly here, it might seem unusual for a Massachusetts court to pass upon the legality of custody in a sister state. The court, therefore, held that the IAD form coupled with the presumption of regularity normally attending official actions satisfied the prosecution's affirmative case for lawful custody. The presumption of regularity, however, is not a mandatory presumption. *Stearns v. United States,* 291 U.S. 54, 63, 54 S.Ct. 325, 328, 78 L.Ed. 647 (1934); P. Liacos, *Handbook of Massachusetts Evidence* 61 (5th ed.1981). In the present case, as the appeals court pointed out, the defendant "did not suggest as part of his case that his imprisonment either in Rhode Island or Massachusetts was unlawful." [2] *Commonwealth v. Giordano,* 8 Mass.App. at 592 n. 2, 395 N.E.2d at 898 n. 2. In such circumstances, the appeals court found that the prosecution did not have to introduce any further evidence of lawful custody in Rhode Island. Lawfulness of custody for the purposes of chapter 268, section 16 could be established by the state's showing that Massachusetts had lawful authority to hold the prisoner.

Given our interpretation of the state court's opinion, we find little merit in Giordano's argument that his conviction violated the fourteenth amendment because the state did not introduce evidence of all elements of the offense. Giordano is correct in saying that the due process clause of the fourteenth amendment demands that no person be convicted except upon "evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson v. Virginia,* 443 U.S. 307, 316, 99 S.Ct. 2781, 2787, 61 L.Ed.2d 560 (1979). Nevertheless, when state convictions are at issue, federal courts look to the state's law in determining what constitutes the elements of the offense, *id.* at 324–26, 99 S.Ct. at 2791–2792; *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), and the weight to be given evidentiary presumptions. *Sandstrom v. Montana,* 442 U.S. at 516, 99 S.Ct. at 2455. As long as rebuttable presumptions are rationally related to the elements of the offense that they establish, they are not constitutionally infirm and the state may employ them. *Ulster County Court v. Allen,* 442 U.S. 140, 157, 99 S.Ct. 2213, 2224, 60 L.Ed.2d 777 (1979). Here, the state court held that the element of lawful custody was satisfied by the presentation of the IAD form and the "presumption of regularity" and that the state did not have to introduce further evidence of the legality of the Rhode Island conviction. Because there is undoubtedly a rational relationship between the evidence that the state introduced, the presumption it employed, and the elements it had to prove, the state was under no constitutional obligation to introduce further evidence of the lawfulness of Giordano's Rhode Island imprisonment.

Giordano contends, however, that the appeals court decision as to the requirements of the state's affirmative case violated the Constitution. He concedes that the state could in other cases convict someone for escape merely by showing that they were held pursuant to the IAD but argues that

---

**2.** The Massachusetts Appeals Court went on to say,

> [Defendant's] counsel conceded (after the denial of his motion for a directed verdict) that his transfer to Massachusetts under the Interstate Agreement was voluntary (see Art.

III[a]), which would operate under Art. III[e], as a consent to custody in Massachusetts and to his return to prison in Rhode Island after final disposition of charges in Massachusetts.

8 Mass.App. at 592 n. 2, 395 N.E.2d at 898 n. 2.

the court's interpretation of chapter 268, section 16 in his case was unconstitutional.[3] In support of this contention he relies upon *Bouie v. City of Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964). In that case the Supreme Court held that the conviction of civil rights demonstrators under a statute prohibiting "entry upon the lands of another ... after notice from the owner or tenant prohibiting such entry" was unconstitutional where the defendants had never received such notice and the statute had never before been construed to prohibit entry without notice. The Court found that the application of the statute under such circumstances deprived the defendants of a fair warning as to whether the conduct they were engaging in was unlawful.

We do not see how *Bouie* is applicable here. Giordano cannot argue that he did not know that the conduct he engaged in was unlawful. He admits that he could have been convicted under another statute, Mass.Gen.Laws ch. 276 App. § 1–5 (1972), and does not deny that the Commonwealth might have proven that he was lawfully imprisoned in Rhode Island. Furthermore, in *Bouie* the Supreme Court relied upon the fact that the state court's expansive interpretation of the trespassing statute did violence to the statute's clear meaning and settled precedent. No such argument can be made here. *See United States ex rel. Hardeman v. Wells,* 379 F.Supp. 1087, 1088–89 (D.Mass.1974) (application of predecessor to chapter 268, section 16, to an inmate who escaped from a furlough is distinguishable from *Bouie* because it did not violate the statute's clear meaning or settled precedent). Chapter 268, section 16, is silent about the element of lawful custody, *see* note 1, *supra,* and no case law has limited the statute's scope as Giordano would have us do. Indeed, before the appeals court decided the instant case, the Massachusetts Supreme Judicial Court had stated that "in

interpreting escape statutes, there is justification for adopting a construction which permits the punishment of all escaping prisoners." *Commonwealth v. Reed,* 364 Mass. 545, 547, 306 N.E.2d 816, 818 (1979). And in a more recent case the Supreme Judicial Court stated that the invalidity of confinement was no defense to a charge of escape as long as the prisoner was held under the color of law. *Petition of Lynch,* 379 Mass. 757, 400 N.E.2d 854 (1980). In so deciding, the court noted that its decision was supported by the weight of authority in other jurisdictions. 379 Mass. at 760 n. 2, 400 N.E.2d at 857 n. 2. Given these precedents, we hardly see how the appeals court's construction of the state statute can be said to constitute a violation of due process.

*Affirmed.*

---

**3.** Giordano also argues that its interpretation of the statute must be incorrect because the Commonwealth of Massachusetts has a specific statute making it unlawful for prisoners held pursuant to the IAD to escape. Mass.Gen. Laws ch. 276 App. § 1–5 (1972). While the appeals court's interpretation of chapter 268, section 16, makes chapter 276 App., section 1–5 partially superfluous, the question of the statute's interpretation is one that must be left to the state courts.