COMMONWEALTH *vs.* JUNIOR CARRION.

Hampden. February 11, 2000. - March 13, 2000.

Present: MARSHALL, C.J., ABRAMS, LYNCH, IRELAND, SPINA, & COWIN, JJ.

*Escape. Department of Youth Services. Statute,* Construction.

An "escape" within the meaning of G. L. c. 120, § 26, is an escape from the custody of the Department of Youth Services and not from any particular facility of the department, and the statute is not void for vagueness or otherwise ambiguous. [45-47]

INDICTMENT found and returned in the Superior Court Department on August 27, 1997.

The case was heard by *Constance M. Sweeney,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Jeanne M. Kaiser* for the defendant.

*Bethany C. Lowe,* Assistant District Attorney (*Jane Davidson Montori,* Assistant District Attorney, with her) for the Commonwealth.

SPINA, J. The defendant, Junior Carrion, was found guilty[1] after a jury-waived trial in the Superior Court of escape from the custody of the Department of Youth Services (department), G. L. c. 120, § 26.[2] On appeal he contends that the statute only applies to escape from a secure facility of the department, and that he properly had not been held at a secure facility at the time of the events in question. We transferred the case to this court on our own motion. We affirm.

[1]The defendant was also found guilty of assault and battery by means of a dangerous weapon, to wit, a sock filled with rocks, G. L. c. 265, § 15A (*b*). He does not press the correctness of that conviction on appeal.

[2]General Laws c. 120, § 26, states: "Whoever escapes, or attempts to escape from the department [of youth services] or aids or assists a child in the custody of the department to escape or attempt to escape shall be punished by a fine of not more than five hundred dollars or by imprisonment for not more than two years."

The facts are not disputed, and are summarized as follows. The defendant had been committed to the department in December, 1994, after being found delinquent by reason of an indecent assault and battery and open and gross lewdness. He was fifteen years old when he was committed, and the commitment was until his eighteenth birthday.[3] In April, 1996, after twice escaping from a residential treatment center where he had been placed by the department, the defendant was transferred to a secure treatment center run by the department in Springfield.

On July 21, 1997, the defendant, who was now seventeen years old, restrained by handcuffs and shackles, was transported by the assistant director of the secure treatment center to Mercy Hospital in Springfield to visit his critically ill father. After the visit, while being escorted back to the assistant director's vehicle, the defendant struck the assistant director in the head with a rock-filled sock, knocking her to the ground. He struck her again, in the forearm, when she tried to get up. The defendant then fled, pursued by the assistant director. She stopped when he threatened to hit a woman and her baby with the sock. Springfield police officers found him later that night in an area near Mercy Hospital, handcuffs and shackles broken.

The defendant contends that the language of § 26, stating "[w]hoever escapes . . . from the department . . . shall be punished . . . ," is vague because of the wide variety of placements available to the department, ranging from home supervision to secure treatment centers. He reasons that, when the Legislature enacted G. L. c. 120, § 26, it only intended to punish escapees from secure treatment facilities of the department, not from lesser forms of custody. The defendant also contends that he was not lawfully detained at the secure treatment facility because his classification to that facility had expired and therefore he could not be convicted of escape.

A penal statute must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited." *Commonwealth* v. *Twitchell*, 416 Mass. 114, 123 (1993), quoting *Kolender* v. *Lawson*, 461 U.S. 352, 257 (1983). Such a statute must be construed strictly in accordance with its terms. See *Commonwealth* v. *Chavis*, 415 Mass. 703, 708 (1993), and cases cited. If the statutory language "can plausibly be found to be ambiguous," the rule of lenity

---

[3]See G. L. c. 119, § 58.

requires the defendant be given "the benefit of the ambiguity." *Commonwealth* v. *Roucoulet*, 413 Mass. 647, 652 (1992). The rule of lenity does not require, however, that absent an ambiguity we construe a penal statute most favorably to a defendant. See *Commonwealth* v. *George*, 430 Mass. 276, 278 (1999). "The maxim that penal statutes are to be strictly construed does not mean that an available and sensible interpretation is to be rejected in favor of a fanciful or perverse one." *Commonwealth* v. *Roucoulet, supra.*

The fact that the department has a wide range of facilities available for placements does not render § 26 vague. The defendant was committed to the department, not to a facility. The essence of that commitment was the creation of a custodial relationship between the defendant and the department. The meaning of the word "escape" as appearing in § 26 is its ordinary meaning, i.e., "absenting oneself from custody without permission." *United States* v. *Bailey*, 444 U.S. 394, 407 (1980). Cf. *Commonwealth* v. *Hughes*, 364 Mass. 426, 429 (1973) (for purposes of escape, "prisoner is as much in the custody of the correctional facility when he is on furlough as when he is physically within its walls"). The proscribed conduct simply is "escape[] . . . from the department," not from any particular facility of the department.

The defendant seeks support for his position from the fact that the Legislature, when amending § 26, left G. L. c. 120, § 13, unchanged, which he argues is an implicit indication that the Legislature intended a degree of punishment less than the incarceration called for by § 26. This argument fails for several reasons. First, § 13 is not a penal statute, but an authorization for certain law enforcement officers to arrest with or without warrant an escapee from the department and hold such person until he or she may be returned to the department. Second, by authorizing the arrest and return of all escapees, a reading of § 13 not disputed by the defendant, the Legislature implicitly recognized that an escape could be made from any placement made by the department. Section 26, likewise, does not differentiate between facilities or placements from which an escape is made. Third, § 26 does not limit the sentencing judge to the imposition of a two-year sentence, as the defendant contends. A judge may properly enter any order for disposition generally available in any juvenile or criminal case. If the escapee was a juvenile offender at the time of the offense, disposition could be

made within the full range of options set forth in G. L. c. 119, § 58. If, as here, the defendant were an adult offender at the time of the escape, sentencing options include a fine, a suspended sentence on probationary terms, a period of incarceration up to two years, or any other disposition permitted by law. See, e.g., G. L. c. 279, §§ 1 et seq.; G. L. c. 276, § 87. We perceive nothing vague or plausibly ambiguous in the language of § 26. It is within common understanding that § 26 is applicable to any escape from custody of the department.

The fact that an employee of the department agreed that youths who have fled from nonsecure facilities are considered "AWOL," and would not seek a prosecution under § 26 in such circumstances is of no significance. The witness was merely expressing his opinion. That opinion does not comport with case law, see *Commonwealth* v. *LaRochelle*, 264 Mass. 490 (1928), and the decision to charge for escape may be made by the Commonwealth.

We need not decide whether the defendant was properly classified for detention at a secure facility because he does not contend that he was not in the custody of the department at the time of his escape. The evidence warrants a finding that he "did escape from the custody of the [department]," the offense for which he was indicted. The assistant director from whose custody he escaped was an agent of the department, so the escape was from the department. See *Commonwealth* v. *Antonelli*, 345 Mass. 518, 521-522 (1963). Further, the record is silent as to whether the defendant ever challenged his continued classification and placement at the secure treatment facility through available administrative procedures. See 109 Code Mass. Regs. § 4.08 (1993). See also *Lynch, petitioner*, 379 Mass. 757 (1980).

*Judgment affirmed.*