URIAH U., COMMONWEALTH vs., 100 Mass. App. Ct. 281

 
 COMMONWEALTH vs. URIAH U., a juvenile (and a companion case [Note 1]).

100 Mass. App. Ct. 281
 July 15, 2021 - September 27, 2021

Court Below: Juvenile Court, Plymouth County
Present: Henry, Sacks, & Singh, JJ.

 

Department of Youth Services. Escape. Practice, Criminal, Juvenile delinquency proceeding, Motion for a required finding, Hearsay. Evidence, Hearsay, Best and secondary.

This court concluded that in a juvenile delinquency proceeding charging a juvenile with escape from Department of Youth custody in violation of G. L. c. 120, § 26, the Commonwealth bears the burden of proving that the custody was lawful. [283-284]

At a juvenile delinquency proceeding charging two juveniles with escape from Department of Youth Services (department) custody in violation of G. L. c. 120, § 26, prejudicial error requiring vacatur of the adjudications of delinquency arose from the admission of testimony of the vice-president of the facility at which the juveniles were held, where the Commonwealth did not establish a foundation for the vice-president's knowledge of the process by which the juveniles were committed to the department's custody, and his testimony was the only evidence that the juveniles were lawfully in the department's custody [284-286]; however, the Juvenile Court judge properly denied the juveniles' motion for a required finding of not delinquent, where the evidence, including the testimony that the juveniles were in the lawful custody of the department, was sufficient to establish the charge of escape [286-287]. 

COMPLAINTS received and sworn to in the Plymouth County Division of the Juvenile Court Department on November 3, 2017. 

 The cases were tried before Dana Gershengorn, J. 

Melissa Allen Celli for Uriah U.

Leslie B. Salter for Adam A.

Audrey Anderson, Assistant District Attorney, for the Commonwealth.

 HENRY, J. This case raises the question whether, when the Commonwealth charges a juvenile with escape from Department of Youth Services (DYS) custody pursuant to G. L. c. 120, § 26, 

 Page 282 

the Commonwealth must prove that the juvenile was in lawful custody. We conclude that it must and accordingly vacate the adjudications of delinquency and remand for further proceedings.

 Background. [Note 2] This case stems from an incident at a residential unit of the Old Colony YMCA (Old Colony Y) in Brockton. The Old Colony Y is "a detention facility [for juveniles] run by DYS." It includes a "revocation facility" for temporary stays of one to thirty days for "[r]esidents that are awaiting [c]ourt." Residents at the Old Colony Y are not "free to come and go as they please"; they are on site twenty-four hours a day. The Old Colony Y is "staff secure" but not "hardware secure," meaning that not every entrance and exit is locked, but that staff are on hand. At the time of the events in this case, these juveniles were housed in the revocation facility of the Old Colony Y and shared a room. 

 On October 28, 2017, Marvin Bernard was working a 3 p.m. to 11 p.m. shift as a youth care advocate at the Old Colony Y when he heard the fire alarm and discovered water coming from the sprinkler system in room no. 6, the room occupied by the juveniles. Bernard went into the juveniles' room to investigate and instructed the juveniles to "step out" of the room "for their safety." The juveniles left the room, "ran for the emergency exit," and left the facility through the emergency exit. No staff member directed the juveniles to leave the facility. Neither juvenile returned to the facility that evening. On the date of the events at issue, both juveniles were fifteen years old. The juveniles were charged with escaping from DYS custody pursuant to G. L. c. 120, § 26. 

 Jay Olsen, the vice-president of the Old Colony Y, responded "[y]es" when asked if the juveniles were committed to DYS custody "through some sort of legal process." The Commonwealth did not offer certified records documenting the juveniles' commitment to DYS, a warrant of commitment or mittimus for either juvenile, or a witness directly involved in the process by which these juveniles came to be at a DYS facility. 

 The juveniles both moved for required findings of not delinquent at the close of the Commonwealth's evidence and, as to the charge of escape, both motions were denied. [Note 3] Neither juvenile 

 Page 283 

presented evidence. One of the juveniles moved again for a required finding of not delinquent; the motion was denied. The jury found both juveniles delinquent on the charge of escape. Both juveniles appealed.

 Discussion. The juveniles contend that the Commonwealth had the burden to prove that the juveniles were in lawful custody and failed to meet that burden. We begin with the elements of the juvenile escape statute, G. L. c. 120, § 26. 

 1. Juvenile escape statute. The juveniles were charged under G. L. c. 120, § 26, which provides in full: "Whoever escapes, or attempts to escape from [DYS] or aids or assists a child in the custody of [DYS] to escape or attempt to escape shall be punished by a fine of not more than five hundred dollars or by imprisonment for not more than two years." The Commonwealth argues that because the statute does not explicitly set forth that the custody of the juveniles must be lawful, it need prove only that the juveniles were in custody, not that such custody was lawful. We disagree. [Note 4]

 The Supreme Judicial Court has previously interpreted the juvenile escape statute by analogy to the adult escape statute. See Commonwealth v. Carrion, 431 Mass. 44, 46 (2000), quoting United States v. Bailey, 444 U.S. 394, 407 (1980) ("'escape' [means] 'absenting oneself from custody without permission'"), and citing Commonwealth v. Hughes, 364 Mass. 426, 429 (1973) (interpreting adult escape statute, G. L. c. 268, § 16). Indeed, the adult and juvenile escape statutes contain analogous language appropriate to the adult and juvenile detention schemes. The adult escape statute, G. L. c. 268, § 16, punishes, among others, "a prisoner committed to any jail or correctional institution under a lawful order of a court, who escapes or attempts to escape." [Note 5] The juvenile escape statute, G. L. c. 120, § 26, similarly punishes "[w]hoever escapes, or attempts to escape from [DYS]."

 The Supreme Judicial Court has long held that an element of the crime of escape is that one must be in lawful custody, even when the requirement of lawful custody was not expressly in the statutory language. See Commonwealth v. Antonelli, 345 Mass. 518, 521 (1963), citing Commonwealth v. Farrell, 5 Allen 130, 131 (1862) ("In order for the defendant to be guilty of escape, the

 Page 284 

 custody of the officer must be lawful"). This court has done likewise. See Commonwealth v. Giordano, 8 Mass. App. Ct. 590, 592 (1979), cert. denied, 446 U.S. 968 (1980) ("Lawfulness of custody is, of course, an element of the crime of escape . . . and as such falls within the Commonwealth's burden of proof"). 

 A similar interpretation of the juvenile escape statute also better comports with "the principal aim and underlying philosophy" of the juvenile justice system. Commonwealth v. Magnus M., 461 Mass. 459, 461 (2012). The juvenile justice system "is primarily rehabilitative . . . [and] geared toward the correction and redemption to society of delinquent children. . . . [D]eviant behavior of children may be regarded as generally less culpable than similar adult behavior" (quotations and citations omitted). Id. Requiring the Commonwealth to prove lawful custody imposes an additional procedural protection for juveniles and brings the juvenile escape statute into compliance with the principle of treating juveniles as "generally less culpable than [adults]" (quotation and citation omitted). Id. [Note 6] 

 Accordingly, we conclude that to prove the crime of escape under G. L. c. 120, § 26, the Commonwealth must prove that the particular juvenile charged is lawfully in the custody of DYS.

 2. Admissibility of testimony that the juveniles were in lawful custody. At trial, Bernard testified generally to the purpose of the Old Colony Y but not to the particulars of these juveniles' commitment to DYS custody. The only testimony that these juveniles were lawfully in the custody of DYS came from Olsen, the vice-president of the Old Colony Y, who responded "[y]es" when asked if the juveniles were committed to DYS custody "through some sort of legal process." The juveniles objected to Olsen's testimony about the lawfulness of their custody on the grounds that "the witness had no personal knowledge of the [j]uveniles' commitment to DYS." [Note 7] The objection was overruled,

 Page 285 

 and Olsen was permitted to answer. Over the course of the trial, the juveniles objected repeatedly that the Commonwealth had failed to offer documentation that the juveniles were in the lawful custody of DYS, and one of the juveniles argued to the judge that the only evidence of lawful custody was hearsay. 

 On appeal, the juveniles argue that (1) Olsen's testimony was inadmissible hearsay and should have been excluded on those grounds, leaving no admissible evidence that the juveniles were lawfully committed to DYS custody, and (2) the evidence was insufficient to prove that custody of the juveniles was lawful. The parties skirmish over whether the juveniles' objection at trial on foundation grounds preserved the hearsay claim that the juveniles press on appeal. The Commonwealth stated in its brief that the juveniles objected to Olsen's testimony, but argued at oral argument that the juveniles did not object and therefore did not preserve the hearsay claim that the juveniles press on appeal. We conclude that the juveniles sufficiently preserved their objection to Olsen's testimony. [Note 8] Accordingly, "we review for prejudicial error and consider whether there is a reasonable possibility that the error might have contributed to the jury's verdict" (quotation and citation omitted). Commonwealth v. Carriere, 470 Mass. 1, 7 (2014). 

 The admission of this testimony was error because the Commonwealth did not establish a foundation for Olsen's knowledge of the process by which these juveniles were committed to DYS custody despite the juveniles' arguments that the testimony lacked foundation and was hearsay. Olsen testified that he was the vice-president of the Old Colony Y with "oversight [of] . . . residential programs that work with DYS youth" and that he was familiar with both juveniles. However, testifying to being "familiar with" the juveniles did not establish an adequate foundation for Olsen's subsequent testimony that the juveniles were committed to DYS custody "through some sort of legal process." Olsen's testimony did not establish how he knew of the process and whether he was relying on underlying documents that would be the best evidence for the proposition. See Commonwealth v. Ocasio, 434 Mass. 1, 5-6 (2001) (discussion of best evidence rule).

 Page 286 

 To prove that an adult charged with escape was in lawful custody, a copy of the mittimus or other documentation of the reason a person is in custody is generally presented. See Giordano, 8 Mass. App. Ct. at 591-592. See also id. at 592 n.2 (cautioning "that we do not by our ruling in this case hold that the Commonwealth may generally in escape prosecutions rely on the presumption of regularity of official actions to avoid proving the lawful basis of the defendant's imprisonment"). Analogous documents in a juvenile case would similarly be appropriate for introduction as evidence here. If there were a danger that information within those documents would be unduly prejudicial, the judge could have ordered appropriate redactions. [Note 9]

 Olsen's testimony was the only evidence that these juveniles were in DYS custody lawfully. It follows that the admission of this testimony prejudiced the juveniles. Olsen's testimony was "significant, if not indispensable, to the Commonwealth's case." Commonwealth v. Dorisca, 88 Mass. App. Ct. 776, 784 (2015). Where, as here, "the evidence improperly received . . . was not addressed to a collateral issue in the case but ran to the center [of the case]," vacating the adjudications of delinquency is warranted. Commonwealth v. Marini, 375 Mass. 510, 521 (1978). 

 3. Sufficiency. We review the denial of a motion for a required finding of not guilty to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (quotation and citation omitted). Commonwealth v. Latimore, 378 Mass. 671, 677 (1979). While the testimony at issue here was erroneously admitted, we consider it in the analysis of the sufficiency of the evidence. See Commonwealth v. Bacigalupo, 455 Mass. 485, 490 (2009) (improperly admitted evidence appropriately included in determining sufficiency of evidence). The juveniles challenge only the sufficiency of the evidence that they were in lawful custody and not the sufficiency of the evidence on any other element of the charge. However, neither juvenile acknowledges that on appeal, we consider

 Page 287 

 even improperly admitted evidence. Here, including Olsen's testimony that the juveniles were in the lawful custody of DYS, the evidence was sufficient to establish the charge.

 Conclusion. We vacate the adjudications of delinquency, set aside the verdicts, and remand to the Juvenile Court for further proceedings consistent with this opinion. If the Commonwealth chooses to retry the juveniles, the Commonwealth must prove through competent evidence and beyond a reasonable doubt that the juveniles were in custody lawfully. See Commonwealth v. DiBenedetto, 414 Mass. 37, 45 (1992), quoting Commonwealth v. Brouillet, 389 Mass. 605, 608 (1983) ("the double jeopardy principle does not automatically bar retrial 'where an insufficiency of evidence appeared only when material held on appellate review to have been erroneously admitted was notionally removed from the case'").

So ordered.

FOOTNOTES
[Note 1] Commonwealth vs. Adam A., a juvenile. 

[Note 2] We recite the facts from the evidence adduced at trial, viewed in the light most favorable to the Commonwealth. See Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979). 

[Note 3] The judge allowed both juveniles' motions for required findings of not guilty on the charge of malicious destruction of property. 

[Note 4] The judge instructed the jury that the Commonwealth must prove "that the juvenile had been committed by legal procedures to the custody of DYS." 

[Note 5] This clause was added by St. 1989, c. 313. 

[Note 6] Were the Commonwealth not required to prove that custody of juveniles is lawful, the burden of proof to adjudicate a juvenile delinquent by means of a charge of escape would be lower than the burden of proof to convict an adult of escape. The Commonwealth has offered no reason to treat juveniles differently and we see none. 

[Note 7] The trial transcript does not contain the contents of sidebar conversations, where counsel stated the grounds for their objections. The juveniles properly filed a motion to reconstruct the record pursuant to Mass. R. A. P. 8 (e) (1), as appearing in 481 Mass. 1611 (2019), and the judge entered an order containing a description of the sidebar conversations, including the grounds for this objection. 

[Note 8] Even were we to conclude that the juveniles did not preserve this objection, the admission of this testimony was error and created a substantial risk of a miscarriage of justice. See Commonwealth v. Rivera, 91 Mass. App. Ct. 796, 801 (2017). 

[Note 9] We do not hold, nor does G. L. c. 120, § 26, require, that the Commonwealth must show that the juveniles were found delinquent or sentenced to prove that they were in the lawful custody of DYS. If the juveniles, for example, were being held in custody during pending legal proceedings, they may have been lawfully in DYS custody. See Carrion, 431 Mass. at 47 ("It is within common understanding that § 26 [of G. L. c. 120] is applicable to any escape from custody of [DYS]"). 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.