BOSTON WATER AND SEWER COMMISSION *vs.*
METROPOLITAN DISTRICT COMMISSION & others[1]
(and two companion cases).

Suffolk. September 4, 1990. - November 13, 1990.

Present: LIACOS, C.J., ABRAMS, NOLAN, & GREANEY, JJ.

*Proposition 2½. Boston Water and Sewer Commission. Statute,* Construction. *Sewer.*

Provisions of G. L. c. 59, § 20A, limiting the amount of certain assessments to cities and towns did not limit the assessments imposed for fiscal years 1982 through 1985 upon the Boston Water and Sewer Commission for sewerage services provided by the Metropolitan District Commission. [575]

CIVIL ACTIONS commenced in the Superior Court Department on October 30, 1981; November 17, 1982; and May 20, 1985, respectively.

The cases were consolidated for trial and were heard by *Robert S. Prince,* J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Laura Steinberg (Katherine J. Ross* with her) for the plaintiff.

*Douglas H. Wilkins,* Assistant Attorney General, for Metropolitan District Commission & others.

*Steven H. Goldberg* for Massachusetts Water Resources Authority.

NOLAN, J. In these consolidated cases we are asked to resolve the relationship between the Boston Water and Sewer Reorganization Act of 1977 (St. 1977, c. 436) and G. L.

---

[1] The Treasurer and Receiver General, the Commissioner of Revenue, and the Massachusetts Water Resources Authority.

c. 59, § 20A (1988 ed.). At issue is whether the Boston Water and Sewer Commission (BWSC) is entitled to the protection of c. 59, § 20A,[2] with respect to assessments imposed upon it for sewerage services provided by the Metropolitan District Commission (MDC).[3]

After a hearing, a Superior Court judge allowed the defendants' motion for summary judgment on December 21, 1988. The plaintiff, BWSC, seasonably appealed to the Appeals Court and we transferred the appeal to this court on our own motion. We hold that BWSC is not entitled to the protection of c. 59, § 20A. Accordingly, we affirm the judgments of the Superior Court.[4]

The facts are not in dispute. In July of 1977, the Boston Water and Sewer Reorganization Act, St. 1977, c. 436, created the Boston Water and Sewer Commission as an independent "body politic and corporate and political subdivision of the commonwealth." § 3. The BWSC became responsible for owning and operating the sewerage and water supply systems within the city of Boston. Until the formation of the BWSC, Boston was a member of the Metropolitan Sewerage District, the Metropolitan Water District, and the Metropolitan Parks District (MSD, MWD, and MPD), respectively. All three were divisions of the MDC. In accordance with §§ 5 and 6 of c. 436, the BWSC's enabling act, Boston's memberships in the Metropolitan Sewerage and Water Districts were transferred to the BWSC.

---

[2] Chapter 59, § 20A, was adopted originally as part of the tax limitation measure commonly known as Proposition 2½ (St. 1980, c. 580, § 12), which was approved by the voters of Massachusetts on November 4, 1980.

[3] In July of 1985, the defendant Massachusetts Water Resources Authority (MWRA), acquired all relevant operations of the MDC's sewerage and water districts. The plaintiff's claims relate only to assessments levied for MDC services prior to July of 1985. MWRA was joined as an alleged successor in interest.

[4] Given our determination that G. L. c. 59, § 20A, does not apply to the BWSC, we do not reach the question whether the § 20A cap on assessments applies to the aggregate assessments by the MDC for all its divisions, or whether such cap must be calculated separately for each division's assessments.

From 1982 through 1985, the MDC services were funded from the State treasury. The treasury in turn received funds through assessments upon MDC district members, including BWSC, in accordance with G. L. c. 92. To collect the funds, the Treasurer sent warrants to each city or town which was a member of an MDC district. Boston, which had retained its membership in the MPD only, received these warrants. The BWSC, as provided in c. 436, paid the portion of the Boston assessment that covered the MDC's water and sewerage services. The MSD assessments for the fiscal years 1982 through 1985 are the subject matter of this litigation.[5]

In its current form, c. 59, § 20A, limits the amount of certain assessments to cities and towns to "two and one-half per cent of the total of such costs, charges or fees over the preceding fiscal year."[6] The plaintiff contends that § 20A applied to the MDC assessments for the years 1981 through 1985, and that such application should have capped the annual increases in assessments upon BWSC for sewerage services provided by the MDC during fiscal years 1982 through 1985.[7] The plaintiff argues that, under its enabling act, c.

---

[5] On July 1, 1985, the MSD and MWD were dissolved and the provisions of G. L. c. 92 which pertained to them were repealed. St. 1984, c. 372, § 30.

[6] General Laws c. 59, § 20A, inserted by St. 1980, c. 580, § 12, reads as follows: "No county, district, public authority or other governmental entity authorized by law to assess costs, charges or fees upon cities or towns may increase the total of such costs, charges or fees with respect to any city or town in any fiscal year by more than four percent over the total of such costs, charges or fees for such city or town for the preceding fiscal year."

Section 20A was amended effective January 1, 1982. St. 1981, c. 782, § 9. That amendment reduced the allowable assessment increases from four per cent to two and one-half per cent and included the MDC and the Commonwealth among those entities governed by the limitations.

The plaintiff contends that the MDC was subject to the limitations of § 20A even before the 1981 amendment. Given our determination that the BWSC is not afforded the protection of c. 59, § 20A, we do not reach the question whether the MDC was within the ambit of the statute's earlier version.

[7] The over-all MSD November, 1981, assessment was 16.1% greater than the corresponding 1980 assessment, and the portion assessed to the city and payable by BWSC was 17.1% greater than the 1980 BWSC assessment. The BWSC instituted a suit in the Superior Court challenging

436, the BWSC inherited all rights and obligations of the city.[8] It contends that, since c. 59, § 20A, would have capped MDC assessments had they been paid directly by the city, the protection of c. 59, § 20A, should, in turn, be afforded the BWSC. The defendants contend that, under the plain meaning and purpose of c. 59, § 20A, which refers to assessments upon "cities and towns," the BWSC is not within the protection of the statute. We agree with the defendants' assertion and therefore affirm the Superior Court judge's allowance of summary judgments.

1. *Chapter 59, § 20A*. Chapter 59, § 20A, "caps" any increase in costs, charges, or fees upon "cities and towns" at two and one-half per cent of the total of such charges or fees in the preceding fiscal year. The BWSC is not a "city or town" as provided for in the statute and therefore is not entitled to its protection. The BWSC is an independent "body politic and corporate and political subdivision of the commonwealth" established by a special act.[9] St. 1977, c. 436, § 3. Under the basic tenets of statutory construction, "[t]he statutory language, when clear and unambiguous, must be given its ordinary meaning." *Bronstein* v. *Prudential Ins.*

---

the validity of the November, 1981, assessment. The MSD assessment of November, 1982 (for fiscal year 1983) was 15.9% over the November, 1981, assessment with the BWSC's portion increasing 12.5%. The BWSC filed a second suit challenging the November, 1982, assessment and the Commissioner of Revenue's failure to calculate limits under G. L. c. 59, § 21D. In November, 1983, the over-all MSD assessment (for fiscal year 1984) decreased as the Commonwealth determined that Proposition 2½ did indeed apply to its assessments of cities and towns. However, the BWSC share increased 4.1%. The BWSC sued for the third time contesting the November 1983 and 1984 assessments. The three cases were consolidated in Superior Court and are now the subject matter of this appeal.

[8] The plaintiff contends that it is heir to whatever protection G. L. c. 59, § 20A, would afford to the city. The plaintiff bases its argument on § 6 (i) of c. 436 under which the BWSC acquired "all of the rights and powers . . . of the city under sections one to thirty-two, inclusive . . . of chapter ninety-two of the General Laws, insofar as the same are applicable and are consistent with the provisions of this act."

[9] For a history of the term "body politic and corporate," see *Kargman* v. *Boston Water & Sewer Comm'n*, 18 Mass. App. Ct. 51, 54-55 (1984).

*Co.*, 390 Mass. 701, 704 (1984). Here, the statute refers to "cities and towns." No ordinary meaning of these terms can include the BWSC.

In *Kargman* v. *Boston Water & Sewer Comm'n*, 18 Mass. App. Ct. 51, 59 (1984), the Appeals Court determined that the BWSC was an "independent body politic and corporate" and not a "public employer" under G. L. c. 258, § 1. A "[p]ublic employer" is defined in that statute as "the commonwealth and any county, *city, town* . . . and any department, office, *commission*, committee . . . which exercises direction and control over the public employee" (emphasis added). G. L. c. 258, § 1. We likewise decline BWSC's invitation to define it as anything but an "independent body politic and corporate." *Id.* Chapter 59, § 20A, may not be construed so as to protect such entities as the BWSC.

In addition to the plain language of both c. 59, § 20A, and the enabling act, the purposes of § 20A further strengthen the determination that the BWSC is not entitled to this protection. Section 20A was originally enacted as part of Propostion 2½ (St. 1980, c. 580, § 12). In *Massachusetts Teachers Ass'n* v. *Secretary of the Commonwealth*, 384 Mass. 209, 221 (1981), this court held that "[a]ll the subjects included in Proposition 2½ relate directly or indirectly to the limitation of State and local taxation." Section 20A was intended to provide relief from taxation. The BWSC obtains its funding from fees and charges (St. 1977, c. 436, § 7 [b]) and from bonds and notes (§ 12). It is not supported by tax revenues. Therefore, the tax relief of c. 59, § 20A, would not be applicable to the BWSC, as no tax benefits would be gained even with application of the statute.

2. *The enabling act.* The BWSC argues that it is "simplistic" to deny it protection solely because it is not a city or town. The BWSC states that, under § 5 of its enabling act, it "steps into the shoes" of the city and, therefore, is entitled to whatever protection § 20A would afford Boston. The BWSC's enabling act, c. 436, § 5, states, in part, that "all debts, liabilities and obligations of the city pertaining to or on account of the water works system and the sewerage

works system . . . *shall be assumed by* and *imposed upon the commission*; provided that all liabilities of the city in tort . . . *shall not be assumed* . . . but *shall continue to be the liabilities of the city*" (emphasis added).

The plain language of c. 436 leads us to the conclusion that the city did *not* continue to be liable for these assessments after the establishment of the commission. Therefore, there were no shoes into which to step. All of the city's liability for assessments was "assumed by and imposed upon" the BWSC. *Id.* By assumption of the liability, the BWSC became the primary obligor to the MDC. *Merrill* v. *Prebilt Co.*, 329 Mass. 166, 169 (1952). The MDC assessments were "imposed upon" the BWSC, not the city. Boston was not a member of the MSD or the MWD in any of the relevant years and therefore had no liability for the assessments. It is immaterial that the Treasurer's warrants were first sent to the city, which then forwarded the water and sewerage portion to the BWSC. This was merely a ministerial action which did not, as the plaintiff argues, transform the assessments into assessments "upon" the city.

3. *Equalization aid.* Given the Legislature's grant of aid to nonmembers of the MSD in 1984 and 1985, a ruling for the BWSC in this case would, in effect, give the residents of Boston a double recovery. Beginning in 1982, the Commissioner of Revenue was charged with calculating the § 20A limits upon assessments (G. L. c. 59, § 21D). The Commissioner did not calculate limits for the BWSC because it was not a city or town. In fiscal years 1982 and 1983, it was the Commonwealth's view that MDC services were not subject to the limits of § 20A. Therefore, assessments for those years exceeded the respective caps. During 1983, however, the Commonwealth acknowledged that MDC assessments to cities and towns were and had been subject to § 20A, and had previously exceeded the caps. Accordingly, not only were 1984 assessments to cities and towns held within the 2½ % limit, but were reduced by an aggregate of almost $10,000,000 to remedy past overassessments. Compensating for the past overassessments left the MDC with a shortage of

funds. To make up for the shortfalls, the Legislature granted the MDC special appropriations in 1984 and 1985. St. 1984, c. 188, § 16. St. 1985, c. 200, § 21. In the interest of fairness, the Legislature conferred so-called "equalization aid" in 1984 and 1985 to "cities and towns which are not a part of both the Metropolitan Parks District and the Metropolitan Sewerage District." St. 1984, c. 188, § 2, item 1599-3318. St. 1985, c. 200, § 2, item 1599-3318.

Although assessments to the BWSC were not reduced in 1984, the city did receive $1,376,062 in "equalization aid" due to its nonmembership in the MSD. The defendants argue that to grant BWSC reduced assessments here would result in duplicative remedies to the citizens of Boston: one due to the equalization aid already received and another due to reduced assessments damages. We agree. The Legislature intended to treat communities equally by granting the aid only to those communities, including Boston, who had not received reduced MDC assessments. By granting the BWSC the protection of § 20A by way of reduced assessments, we would, in effect, be granting Boston residents a double recovery where the Legislature intended only one.

The BWSC contends that the Legislature did not realize that the city would be benefiting from the equalization aid. The plaintiff asserts that the Legislature mistakenly believed that Boston's sewerage district assessments had been reduced by Proposition 2½ and therefore the city would not be benefiting from the equalization aid it was granting. In support of its argument, the plaintiff offers statements of State representatives made on the House floor. We reject the plaintiff's notion that the Legislature was simply ignorant of the facts. Statements of individual legislators as to their motives concerning legislation are an inappropriate source from which to determine the intent of legislation. *Administrative Justice of the Hous. Court Dep't* v. *Commissioner of Admin.*, 391 Mass. 198, 205 (1984). We continue to adhere to the long-standing principle that the Legislature is "presumed to understand and intend all consequences" of its acts. *Rambert* v. *Commonwealth*, 389 Mass. 771, 774 (1983). The Legislature

did indeed grant equalization aid to the city in an amount in excess of $1.3 million. We presume, as we must, that the Legislature provided this aid with the understanding that the citizens of Boston had not benefited from the reduction of assessments under Propostion 2½.

*Judgments affirmed.*