COMMONWEALTH *vs.* RUSS R., a juvenile.

Suffolk. November 10, 2000. - March 20, 2001.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & SOSMAN, JJ.

*Juvenile Court. Witness,* Immunity. *Statute,* Construction.

Discussion of the 1996 amendments to G. L. c. 119, the law governing juvenile offenders. [517-518]

Discussion of the 1998 amendments to G. L. c. 233, § 20E, governing the grant of immunity to a witness in a criminal proceeding. [518-519]

Where G. L. c. 233, § 20E, authorizes only the Justices of the Supreme Judicial Court, the Appeals Court, and the Superior Court to immunize witnesses in criminal cases pending in those courts, a District Court judge was without authority to grant immunity under that statute to a Commonwealth witness scheduled to testify in a proceeding in a juvenile session of the District Court, and the specific provisions of that statute governed over any inconsistent general provision in the earlier amended G. L. c. 119, § 56 (*d*), relating to the authority of Juvenile Court judges. [519-523] IRELAND, J., concurring, with whom SOSMAN, J., joined. GREANEY, J., dissenting, with whom SPINA, J., joined.

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on December 17, 1999.

The case was reported by *Ireland,* J.

*Tracey A. Cusick,* Assistant District Attorney, for the Commonwealth.

*Scott P. Curtis* for the juvenile.

COWIN, J. General Laws c. 233, § 20E, authorizes Justices of the Supreme Judicial Court, the Appeals Court, and the Superior Court to issue an order granting immunity to a witness.[1] General Laws c. 119, § 56 (*d*), provides that judges presiding over jury

---

[1]General Laws c. 233, § 20E, provides: "A justice of the supreme judicial court, appeals court or superior court shall . . . issue an order granting immunity to a witness, provided that such justice finds that the investigation or proceeding before the grand jury or the criminal proceeding in the supreme judicial court, appeals court or superior court involves an offense listed in section 20D [see note 10, *infra*] and that the witness did validly refuse, or is likely to refuse, to answer questions or produce evidence on the grounds that such testimony or such evidence might tend to incriminate him."

sessions in the Juvenile Court Department[2] "shall have and exercise all the powers and duties which a justice sitting in the superior court department has and may exercise in the trial and disposition of criminal cases."[3] The present case requires us to determine whether § 56 (*d*) provides Juvenile Court judges with the authority to grant immunity to a witness pursuant to the immunity statute. This question arises because in one statute the Legislature has enumerated three courts that have the authority to grant immunity, including the Superior Court but not the Juvenile Court; yet, in another statute, the Legislature provided Juvenile Court judges with all the powers of Superior Court judges in criminal proceedings. These two statutes appear to be

[2]By its terms G. L. c. 119, § 56 (*d*), applies only to judges in the jury session of the Juvenile Court Department. The parties have briefed and argued the case, however, as if the statute included within its terms judges presiding over jury trials in the juvenile session of the District Court. It does appear that the Legislature intended to endow all judges presiding over juvenile jury sessions with the same authority, regardless of whether a separate division of the Juvenile Court Department had yet been established in that particular locality. See St. 1998, c. 487, § 2, as amended by St. 1999, c. 174, § 2 ("The jurisdiction of the district court juvenile sessions . . . shall continue in effect . . . until such time as a division of the juvenile court department having territorial jurisdiction corresponding to that of such division of the district court department is established or January 1, 1999, whichever shall first occur . . . provided, however, that the divisions of the district court department in the counties of Middlesex and Norfolk shall continue to accept such cases and petitions for filing and issue process therein, until such time as a division of the juvenile court department having territorial jurisdiction corresponding to such divisions of the district court department is established, or January 1, 2001, whichever shall first occur"). Accordingly, we use the term "Juvenile Court judge" to include District Court judges presiding over jury trials in juvenile sessions of the District Court Department until such time as their jurisdiction to hear these matters expires pursuant to St. 1999, c. 174, § 2. Similarly, we use the term "Juvenile Court" to include the juvenile sessions of the District Court Department. We further note that, although St. 1999, c. 174, § 2, has expired by its own terms, this makes no difference for purposes of the instant case which arose when District Court judges still presided over juvenile sessions.

[3]Although the parties framed the issue in terms of Juvenile Court judges presiding over trials in *jury sessions*, we note that a "child" can waive his or her right to a jury trial and Juvenile Court judges in such *jury-waived trials* also "shall have and exercise all of the powers which a justice sitting in the superior court department has and may exercise in the trial and disposition of criminal cases." G. L. c. 119, § 55A. We shall use the term "Juvenile Court judge" in this opinion to encompass both Juvenile Court judges presiding over jury sessions and those presiding over jury-waived trials as well.

in conflict. We therefore must decide whether the Legislature intended to confer on the Juvenile Court the Superior Court's power to grant immunity to a witness. We conclude that the Legislature did not so intend.

1. *Background.* We briefly summarize the relevant facts and proceedings. The juvenile was indicted as a youthful offender for breaking and entering with the intent to commit a felony, larceny of a firearm, possession of an unlicensed firearm, possession of a firearm with a defaced identification number, and receiving stolen property. Prior to trial in the juvenile session of the Quincy Division of the District Court Department, a judge in that court denied the Commonwealth's application for a grant of immunity to a witness, who was scheduled to testify for the Commonwealth.[4] The judge denied the Commonwealth's application for immunity, ruling that § 20E "limits the authority to immunize witnesses to those 'criminal proceedings . . . IN the superior court' " (emphasis in the District Court's order).

The Commonwealth appealed to a single justice of this court, who, after a hearing, reserved and reported the matter to the full court. We affirm the District Court judge's order denying the Commonwealth's application for an order granting immunity to the witness.

2. *1996 amendments to G. L. c. 119.* In 1996, the Legislature made significant changes to the law governing juvenile offenders. See St. 1996, c. 200 (youthful offender act). These changes were designed primarily "to reduce or to eliminate certain protections previously available to all juvenile offenders in an effort to address growing concern about violent crimes committed by juveniles." *Commonwealth* v. *Connor C.*, 432 Mass. 635, 641 (2000), quoting *Commonwealth* v. *Clint C.*, 430 Mass. 219, 227-228 (1999).

One of the changes wrought by the 1996 amendments was the repeal of the two-step transfer provision, G. L. c. 119, § 61, which provided that a case could be transferred from the

---

[4]The Commonwealth filed the application seeking immunity in response to the witness's motion in limine invoking her privilege against self-incrimination under the Fifth Amendment to the United States Constitution. The District Court judge had allowed the witness to invoke her Fifth Amendment privilege. The Commonwealth did not contest that ruling.

Juvenile Court to the Superior Court in order to try a child fourteen years of age or older as an adult.[5] Under the new law, the Commonwealth may proceed against a child by indictment in a Juvenile Court[6] if the child is considered a "youthful offender."[7] See G. L. c. 119, §§ 52, 54. The 1996 legislation permits Juvenile Court judges to treat violent juvenile offenders more severely than juveniles who commit less serious crimes, including sentencing such offenders to a State prison or house of correction. G. L. c. 119, § 58. See R.L. Ireland, Juvenile Law § 3, at 13 (Supp. 1999). In addition, the Legislature reaffirmed[8] that a Juvenile Court judge has "all the powers and duties which a justice sitting in the superior court department has and may exercise in the trial and disposition of criminal cases."[9] G. L. c. 119, § 56 (*d*), as appearing in St. 1996, c. 200, § 4.

[5]Formerly, transfer was permitted only if the Juvenile Court judge determined, after a hearing, that probable cause existed to believe that the child had committed the offense and that the child "presents a danger to the public, and [that] the child is [not] amenable to rehabilitation within the juvenile justice system." G. L. c. 119, § 61, repealed by St. 1996, c. 200, § 7.

[6]When an indictment is returned in the Superior Court, the indictment is then "promptly" remitted to the Juvenile Court where such indictment is to be tried, according to the provisions governing Juvenile Court proceedings. G. L. c. 263, § 4.

[7]A youthful offender is a person who committed an offense, while between the ages of fourteen and seventeen years, which would be punishable by imprisonment in the State prison and "(*a*) has previously been committed to the department of youth services, or (*b*) has committed an offense which involves the infliction or threat of serious bodily harm in violation of law, or (*c*) has committed a [firearm offense in] violation of paragraph (*a*), (*c*) or (*d*) of [G. L. c. 269, § 10]." G. L. c. 119, § 52, as amended through St. 1996, c. 200, § 1.

[8]The Juvenile Court judge had this same power prior to 1996. See G. L. c. 119, § 56, as amended through St. 1971, c. 336 ("The justice presiding over a jury of twelve in said juvenile court shall have and exercise all the powers and duties which a justice of the superior court has and may exercise in the trial and disposition of appeals . . .").

[9]Contrary to the arguments of the parties, the Legislature did not limit the exercise of these powers to youthful offender proceedings; rather, Juvenile Court judges have and may exercise these powers in *any* jury or jury-waived trial. See G. L. c. 119, §§ 55A, 56 (*d*). We also note that judges of the District Court presiding over both jury and jury-waived criminal trials have "all of the powers and duties which a justice sitting in the superior court department has and may exercise in the trial and disposition of criminal cases." G. L. c. 218, § 26A. G. L. c. 218, § 27A (*d*). Thus, if this language were sufficient to

3. *1998 amendments to G. L. c. 233.* In 1998, the Legislature "significantly broadened . . . the procedural circumstances in which witnesses may be granted immunity." *Commonwealth* v. *Dalrymple,* 428 Mass. 1014, 1015 (1998). See St. 1998, c. 188, § 4. Prior to the 1998 amendments, only a Justice of this court could issue an order granting immunity to a witness and only at the grand jury stage of the proceedings. See G. L. c. 233, §§ 20C-20H, inserted by St. 1970, c. 408. Pursuant to the amended law, a Justice of this court, the Appeals Court, or the Superior Court "shall . . . issue an order granting immunity to a witness, provided that such justice finds that the investigation or proceeding before the grand jury or the criminal proceeding in the supreme judicial court, appeals court or superior court involves an offense listed in section 20D[10] and that the witness did validly refuse, or is likely to refuse, to answer questions or produce evidence on the grounds that such testimony or such evidence might tend to incriminate him." G. L. c. 233, § 20E (*a*).

4. *Discussion.* Mindful of the history of the statutes and the subsequent amendments, as well as long-standing principles of statutory construction, we consider the relationship between G. L. c. 119, § 56 (*d*), and G. L. c. 233, § 20E.

---

confer the power to grant immunity on the theory that Superior Court judges have such power in criminal trials, then our ruling would grant that power to judges in both the Juvenile Court and the District Court (to the extent of its jurisdiction) in any delinquency or criminal proceeding enumerated in G. L. c. 233, § 20D. See note 10, *infra.*

[10]The offenses enumerated in G. L. c. 233, § 20D, are "abortion, arson, assault and battery to collect a loan, assault and battery by means of a dangerous weapon, assault to murder, breaking and entering a dwelling house or building, bribery, burning of a building or dwelling house or other property, burglary, counterfeiting, deceptive advertising, electronic eavesdropping, embezzlement, extortion, firearm violations, forgery, fraudulent personal injury and property damage claims, violation of the gaming laws, gun registration violations, intimidation of a witness or of a juror, insurance law violations, kidnapping, larceny, lending of money or thing of value in violation of the general laws, liquor law violations, mayhem, murder, violation of the narcotic or harmful drug laws, perjury, prostitution, violations of environmental control laws (pollution), violations of conflicts of interest laws, consumer protection laws, pure food and drug law violations, receiving stolen property, robbery, subornation of perjury, uttering, or any felony, being an accessory to any of the foregoing offenses and conspiracy or attempt or solicitation to commit any of the foregoing offenses."

We acknowledge that the statutes at issue may be interpreted in two conflicting ways. On the one hand, the Legislature is presumed to be aware of existing statutes when it amends a statute or enacts a new one. See *Charland* v. *Muzi Motors, Inc.*, 417 Mass. 580, 582-583 (1994), and cases cited. Thus, we presume that the Legislature was aware that § 56 (*d*) provided Juvenile Court judges with the authority of Superior Court judges in the trial and disposition of criminal cases when it amended the immunity statute to empower Superior Court judges to immunize witnesses in criminal proceedings. If the Legislature were aware that § 56 (*d*) gave the Juvenile Court the same powers, there was no need to refer specifically to the Juvenile Court in the immunity statute.

However, other canons of statutory construction lead us to a different conclusion, namely that the Legislature did not intend to grant immunity power to Juvenile Court judges. When a statute is plain and unambiguous, we interpret it according to its ordinary meaning. See *Commonwealth* v. *Brown*, 431 Mass. 772, 775 (2000), citing *Victor V.* v. *Commonwealth*, 423 Mass. 793, 794 (1996). "Of course, this meaning must be reasonable and supported by the purpose and history of the statute." *Wright* v. *Collector & Treasurer of Arlington*, 422 Mass. 455, 457-458 (1996), citing *Sterilite Corp.* v. *Continental Cas. Co.*, 397 Mass. 837, 839 (1986). Here, looking only at the language of § 20E, the statute provides that the Justices of this court, the Appeals Court, and the Superior Court have the power to immunize witnesses. The statute makes no reference to Juvenile Court or District Court judges.[11] See 1997 House Doc. No. 2044 (in letter to Senate and House of Representatives Governor William Weld wrote that proposed legislation would amend immunity statute to "grant this power to the justices of the Appeals Court and Superior Court as well" but did not mention judges of any other court). We are not permitted to add words to a statute that "the Legislature did not see fit to put there." *General Elec. Co.* v. *Department of Envtl. Protection*, 429 Mass. 798, 803 (1999), quoting *King* v. *Viscoloid Co.*, 219 Mass. 420, 425 (1914). See *Commissioner of Revenue* v. *Cargill, Inc.*, 429 Mass. 79, 82 (1999) ("Where, as here, the language of the statute is clear, it is the function of the judiciary to apply it, not amend it").

---

[11]See note 10, *supra*.

In addition, "a statutory expression of one thing is an implied exclusion of other things omitted from the statute." *Police Comm'r of Boston* v. *Cecil*, 431 Mass. 410, 413 (2000), quoting *Harborview Residents' Comm., Inc.* v. *Quincy Hous. Auth.*, 368 Mass. 425, 432 (1975), and cases cited. The Legislature enumerated three courts in the immunity statute, but did not include the Juvenile Court. Accordingly, the Legislature's actions suggest that it intended to exclude the Juvenile Court.

Further, where two statutes conflict, the later statute governs. See *Boston Hous. Auth.* v. *Labor Relations Comm'n*, 398 Mass. 715, 718 (1986), citing *Doherty* v. *Commissioner of Admin.*, 349 Mass. 687, 690 (1965). In this case, the immunity statute was amended two years after § 56 (*d*) was enacted. Similarly, where "a general statute and a specific statute cannot be reconciled, the general statute must yield to the specific statute." *Pereira* v. *New England LNG Co.*, 364 Mass. 109, 118 (1973). See *Morales* v. *Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992), citing *Crawford Fitting Co.* v. *J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987) ("it is a commonplace of statutory construction that the specific governs the general"); *Morey* v. *Martha's Vineyard Comm'n*, 409 Mass. 813, 819 (1991) (general language must yield to more precise language); *Hennessey* v. *Berger*, 403 Mass. 648, 651 (1988) (same). Section 56 (*d*) confers a *general* power on Juvenile Court judges in jury sessions ("*all* the powers and duties which a justice sitting in the superior court department has"), whereas § 20E provides the Justices of the enumerated courts with the *specific* power to immunize witnesses.

When rules of statutory construction produce conflicting results, we must discern, as closely as possible, what the Legislature intended. See *Helvering* v. *Stockholms Enskilda Bank*, 293 U.S. 84, 89 (1934) (canons of statutory construction apply to ascertain meaning of statute, but if one canon does not effectuate purpose of statute as whole, it yields to "the wider view in order that the will of the legislature shall not fail"); *Commonwealth* v. *Dale D.*, 431 Mass. 757, 760-761 (2000), and cases cited ("We construe statutes in accordance with the Legislature's intent and in order to effectuate the purpose of their framers"). Even assuming that the Legislature was

cognizant of the general delegation of Superior Court powers to the Juvenile Court in § 56 (*d*), it is unlikely that the Legislature would have relied on that section to authorize the Juvenile Court to grant immunity to witnesses when it amended the immunity statute to include specifically the Appeals Court and the Superior Court. The amendment served to *expand* the power to immunize witnesses. In such circumstance, the Legislature likely considered carefully which courts should be granted this additional power. It easily could have included the Juvenile Court in the statute, and we assume it would have done so if that were its intent.

Further, the authority to grant immunity to a witness is delineated by the court *in which* the proceeding occurs. The statute makes no provision for granting immunity to witnesses in proceedings held in the Juvenile or District Court.[12] Rather, it provides that "[a] justice of the supreme judicial court, appeals court or superior court shall . . . issue an order granting immunity to a witness . . . [scheduled to testify in a] criminal proceeding *in* the supreme judicial court, appeals court or superior court" (emphasis supplied). G. L. c. 233, § 20E (*a*). Thus, the determination of immunity is dependent on the court *in which* the proceeding takes place. Regardless of the judge who is authorized to grant immunity, a witness may only be immunized for a proceeding *in* the Supreme Judicial Court, the Appeals Court, or the Superior Court. The District Court judge in this case correctly recognized that the authority to grant immunity to a witness is limited "to those 'criminal proceedings . . . IN the superior court' " (emphasis in the District Court's order).[13] The plain language of the statute does not permit a Justice of any court, including this one, to grant immunity to a witness scheduled to testify in a proceeding conducted *in* the Juvenile or District Court. We, therefore, conclude that the Legislature did not intend to provide Juvenile Court judges (or any judge) with the power to issue an order granting immunity to a witness in a Juvenile Court proceeding.

The Commonwealth argues that this interpretation would

---

[12] See note 10, *supra.*

[13] It is apparently for that reason that the District Court judge capitalized the word "IN."

carve out an exception to the provision that Juvenile Court judges in jury sessions shall have *all* the powers and duties of Superior Court judges sitting in criminal cases. That may be so, but it is an exception that the Legislature itself created. We assume that the Legislature " 'understand[s] and intend[s] all consequences' of its acts." *Charland* v. *Muzi Motors, Inc.*, 417 Mass. 580, 583 (1994), quoting *Boston Water & Sewer Comm'n* v. *Metropolitan Dist. Comm'n*, 408 Mass. 572, 578 (1990).

We recognize that the youthful offender act was an attempt to address "the prevalent societal issue of juvenile violence," R.L. Ireland, Juvenile Law § 2, at 8 (Supp. 1999), and that its new provisions reflect an attitude of dealing more severely with juveniles who commit violent crimes (e.g., confinement in a State prison or house of correction, G. L. c. 119, § 58; mandatory penalties for certain weapons violations, *id.*; court proceedings open to the public, G. L. c. 119, § 65; court records open to public inspection, G. L. c. 119, § 60A). See R.L. Ireland, *supra* at 8-9. Whatever the impact on the powers of Juvenile Court judges as a result of the statute at issue here, the Legislature has made that choice.[14] It is not our function "to judge the wisdom of legislation or to seek to rewrite the clear intention expressed by the statute." *Commonwealth* v. *Leno*, 415 Mass. 835, 841 (1993), quoting *Mellor* v. *Berman*, 390 Mass. 275, 283 (1983). We defer to the Legislature in this matter.

5. *Conclusion.* We conclude that judges in the Juvenile Court do not have the power to issue an order granting immunity to a

---

[14]The dissent contends that our decision will impede the Commonwealth's ability to prosecute youthful offenders. See *post* at 524. Our interpretation of the immunity statute, however, does not deprive the Commonwealth of any power that it previously possessed. Prior to the amendment of the immunity statute and the enactment of the youthful offender act, a witness in a juvenile proceeding could never be granted immunity (even if the case were transferred to the Superior Court), because immunity could be granted only at the grand jury stage of a proceeding, and juveniles could not be indicted by grand juries. G. L. c. 119, § 61, repealed by St. 1996, c. 200, § 7. G. L. c. 233, §§ 20C-20H, inserted by St. 1970, c. 408. Pursuant to our interpretation, the Commonwealth now may seek immunity for a witness involved in a proceeding charging a person between the ages of fourteen and seventeen years with murder in the first or second degree, as these proceedings are brought in the Superior Court. G. L. c. 119, §§ 72B, 74.

witness pursuant to G. L. c. 233, § 20E. We therefore affirm the District Court judge's order.

*So ordered.*

IRELAND, J. (concurring, with whom Sosman, J., joins). While I agree with the majority opinion, I write separately to express my deep concerns about its practical consequences. Indeed, as the dissent asserts, our decision may "seriously impede the prosecution of dangerous and violent juvenile offender[]" cases. *Post* at 524. However, given our analysis and rules of statutory interpretation, I believe we are constrained to reach the conclusion we reach. Accordingly, I urge and invite the Legislature to address this obvious oversight immediately.

GREANEY, J. (dissenting, with whom Spina, J., joins). The court's decision will seriously impede the prosecution of dangerous and violent juvenile offenders. To give just one example — as a result of the decision, a prosecutor, in a case involving violent crimes committed by juvenile gang members (a common occurrence in today's society) will not be able to offer immunity to one gang member in exchange for his testimony against the others, a situation which may stymie or prevent the prosecution.[1] I conclude that the Legislature could not have intended to withhold the power to grant immunity from Juvenile Court judges, and thus undermine the goals of the Youthful Offender Act. I, therefore, dissent.

The court's interpretation fails to give full effect to the

---

[1] With the exception of prosecutions for murder, the impediment to prosecution described above could affect violent crimes such as arson, armed burglary, armed robbery, assaults, extortion, a variety of firearm violations, witness and juror intimidation, kidnapping, violations of the narcotic or harmful drug laws, receiving stolen property, rape and other sexual assaults, subornation of perjury, and conspiracy or attempt or solicitation to commit these offenses. This list is not exhaustive of the offenses set forth in G. L. c. 233, § 20D, but it provides an enumeration of many crimes often committed by gangs of juveniles which could result in prosecution under the Youthful Offender Act, and in connection with which a prosecutor could desire or need the assistance of a grant of immunity in order to try the dangerous juvenile or juveniles who committed the crime or crimes.

language of § 56 (*d*), contrary to the accepted principle of interpretation that all the words in a statute are to be given meaning. See *Hallett* v. *Contributory Retirement Appeal Bd.*, 431 Mass. 66, 69 (2000). By so doing, the court carves out an unwarranted exception to the provision in § 56 (*d*) that Juvenile Court judges in jury sessions shall have *all* the powers and duties of Superior Court judges sitting in criminal cases. Under the court's construction, § 56 (*d*) now reads as providing Juvenile Court judges in jury sessions with the powers of Superior Court judges in the trial and disposition of criminal cases *except* for the power to enter an order granting a witness immunity. Thus, the court "make[s] [part of the] statutory language meaningless," an undesirable result. See *Commonwealth* v. *Maher*, 408 Mass. 34, 37 (1990).

In my view, § 20E of the immunity statute, and § 56 (*d*) of G. L. c. 119, can be read together.[2] It should be assumed that the Legislature was aware of existing statutes when it enacted § 20E, *Mathewson* v. *Contributory Retirement Appeal Bd.*, 335 Mass. 610, 614 (1957), and every effort should be made to interpret § 20E in harmony with § 56 (*d*), in order to create a consistent body of law. See *Charland* v. *Muzi Motors, Inc.*, 417 Mass. 580, 582-583 (1994), and cases cited. "The Legislature is 'presumed to understand and intend all consequences' of its acts." *Id.* at 583, quoting *Boston Water & Sewer Comm'n* v. *Metropolitan Dist. Comm'n*, 408 Mass. 572, 578 (1990). In 1998, when the Legislature amended the immunity statute to authorize Superior Court judges to immunize witnesses in criminal proceedings, it must have been cognizant that § 56 (*d*), enacted not two years earlier, continued in effect the provision that Juvenile Court judges possessed all the authority of Superior Court judges in the trial and disposition of criminal cases. It follows logically that the Legislature intended Juvenile Court judges to exercise immunity powers, because the Legislature presumably understood that, by providing Superior Court judges with the authority to immunize witnesses, it was

---

[2]It is not necessary to construe § 20E strictly against the Commonwealth. See *Commonwealth* v. *Carrion*, 431 Mass. 44, 45-46 (2000) (rule of lenity requires that ambiguous language in penal statute be construed in favor of defendant). Section 20E does not define criminal conduct or prescribe punishment, and, therefore, is not a penal statute. See *id.* at 46.

providing Juvenile Court judges with this power as well.

This conclusion is consistent with, and supported by, the climate that existed at the time the Legislature amended the immunity statute. The Youthful Offender Act, passed shortly before § 20E, was an emphatic and strong legislative response to "the prevalent societal issue of juvenile violence." R.L. Ireland, Juvenile Law § 2, at 8 (Supp. 1999). That Act's new provisions reflected the more conservative view that the Legislature had adopted toward juveniles who commit violent crimes (e.g., confinement in a State prison or house of correction, G. L. c. 119, § 58; mandatory penalties for certain weapons violations, id.; court proceedings open to the public, G. L. c. 119, § 65; court records open to public inspection, G. L. c. 119, § 60A). See R.L. Ireland, supra at 8-9. The Legislature obviously concluded that violent juvenile offenders should be prosecuted in the Juvenile Court, essentially in the same manner as adults in the Superior Court.[3] Because the Legislature has broadened the jurisdiction, and concomitant authority, of Juvenile Court judges to confront escalating violent juvenile crime, it would be inconsistent for the Legislature, only two years later, to confine the power to immunize witnesses to Superior Court judges and thereby deprive prosecutors of a vital crime fighting tool.[4] The order below should be vacated and the case remanded with directions that the Commonwealth's application for immunity for the witness should be heard, and, if appropriate, granted.

---

[3]For example, many of the discovery provisions applicable to Superior Court proceedings were also made applicable to Juvenile Court proceedings. G. L. c. 119, § 55A.

[4]The witness for whom immunity is sought argues that an interpretation of § 20E, in light of § 56 (d), would create an "anomaly," by which District Court judges would have the authority to issue an order granting immunity in juvenile sessions, but those same District Court judges could not do so in any other proceedings. There is no anomaly. District Court judges have the authority to grant immunity in other proceedings pursuant to G. L. c. 218, §§ 26A and 27A (providing District Court judges presiding over jury and jury-waived criminal trials with "all the powers and duties which a justice sitting in the superior court department has and may exercise in the trial and disposition of criminal cases"). The powers, including the power to grant immunity, would apply to the relatively small category of cases, identified in § 20D, that fall within District Court criminal jurisdiction.