Hines, Geraldine S., J.

INTRODUCTION

In this action, the plaintiff, Peter Miranda (“Miranda”) the trustee of the G.P. Hassett Drive Realty Trust (“Trust”), seeks a writ of mandamus compelling the defendant, Paul Mochi (“Mochi”) to revoke a building permit issued to Springstep, Inc. (“Springstep”), the owner of the property located at 98 George P. Hassett Drive in Medford. The Trust is the owner of the abutting property located at 100 George P. Hassett Drive. Mochi, the Building Commissioner for the city of Medford, issued the building permit which the plaintiff now challenges. The Complaint alleges that: 1) the Trust filed a timely and valid appeal of the granting of the permit to Springstep; 2) the Board of Appeal failed to act on the appeal within the one hundred-day time limit imposed by G.L.c. 40A, §15; and 3) the Board’s failure to act resulted in a constructive granting of the relief sought in the appeal. Mochi counters that the Trust failed to perfect the appeal by filing it in accordance with the relevant provisions of the governing statute and, therefore, it is not entitled to a writ of mandamus.
The plaintiffs claim was tried to this court sitting without a juiy on February 3, 2005. After consideration of the testimony of the witnesses, stipulations of the parties and the exhibits admitted during the trial, I make the following findings of fact and rulings of law. The order for judgment is based on these findings and rulings.

FINDINGS OF FACT

With one major exception discussed below, the facts are largely undisputed. The Trust, a nominee trust, purchased the property located at 100 George P. Hassett Drive in the city of Medford on February 2, 1999. Miranda, an attorney with expertise in real estate matters is the trustee. Russell Fleming (“Fleming”), Miranda’s law partner, has specialized in real estate matters since at least 1985. Fleming acted as agent for the Trust with respect to certain matters related to the appeal of the special permit allowing Springstep’s construction project at 98 George P. Hassett Drive.
Springstep, a non-profit corporation, purchased the property at 98 George P. Hassett Drive from Miranda’s former business associates.[1] Miranda and Fleming were aware that the property at 98 George P. Hassett Drive was to be sold to Springstep. At some point after the sale, Springstep met with Fleming at 100 George P. Hassett Drive. Springstep’s attorney and architect were also present at that meeting. Fleming was told that Springstep intended to apply for a special permit for construction at the site. Springstep also inquired if the Trust would object.[2] On April 2, 2001, the Off Street Parking Commission voted to approve a permit allowing Springstep to have ten parking spaces on the site. On May 22, 2001, Springstep applied to the Medford Community Devel *390 opment Agency[3] for the required special permit to construct a building exceeding 10,000 square feet.
The Planning Board scheduled a public hearing for June 13, 2001 on Springstep’s application and sent notice of the hearing to those property owners on the abutter’s list certified by the city of Medford’s Assessor. The abutter’s list was created in accordance with policy and practices of the Assessor’s office. Consistent with that policy, the Assessor prepared the abutter’s list using information contained in the deeds transmitted in the ordinary course from the Middlesex Registry of Deeds. After receiving a deed, the Assessor extracts for his records the description of the property, the owner’s name and the owner’s address. In the case of the plaintiffs property, the Trust was listed in the deed as the grantee and the grantee’s address was recorded as 591 North Avenue, Building 4, Wakefield, Massachusetts. Plaintiff, however, ceased using that address in January 1999. Though the Assessor’s policy required a written request to change the address, plaintiff never submitted a written request to change the address listed in the deed. The notice of the public hearing on Springstep’s application for a special permit was sent to the Trust at 591 North Avenue, Building 4, Wakefield Massachusetts, the only address known to the Assessor. The Assessor also published notice of the hearing in local newspapers.
On June 16, 2001, the Planning Board held the hearing and approved, with conditions, Springstep’s application for a special permit. Mochi, the Building Commissioner, issued a building permit to Springstep on January 9, 2002. Almost immediately thereafter, Springstep signaled the impending construction by erecting construction fences around the property. Miranda and others at 190 George P. Hassett Drive observed the fences and began the Trust’s effort to challenge the granting of the special permit.[4]
Shortly after the fences went up, Fleming telephoned John O’Hearn, the Administrative Assistant to the Board, complaining that the Trust had not received notice of Springstep’s application for a special permit. On January 24, 2002, Miranda sent Mochi a letter formally demanding that Mochi revoke Springstep’s building permit. The letter asserted that Miranda had not received notice of the hearing on Springstep’s application for a special permit and that the building did not have sufficient parking as required by the Medford Zoning Ordinance. Mochi denied the request and informed Miranda of his decision on January 29, 2002.
On February 12, 2002, Fleming, acting as the Trust’s agent, filed with the Medford Cily Clerk, the Trust’s appeal of Mochi’s decision declining to revoke Springstep’s permit. Fleming did not pay the required filing fee. Fleming also filed an attested, date-stamped, time-stamped copy of the appeal with Mochi. Fleming did not, however, file the appeal with the Board.[5]
The Board did not hold a hearing or take any other action on the appeal. On May 24, 2002, Miranda served notice to the City that pursuant to G.L.c. 40A, §15, the appeal of Mochi’s granting of the special permit to Springstep was constructively allowed on account of the Board’s failure to act within the one hundred-day statutory time limit. Miranda then requested on June 5, 2002 that Mochi enforce the Board’s “decision” revoking Springstep’s permit. By letter dated June 6, 2002, Mochi refused the request to revoke Springstep’s permit.

RULINGS OF LAW

This petition for a writ of mandamus rests squarely on the plaintiffs assertion that its appeal of the granting of the special permit to Springstep was constructively allowed when the Board failed to act within one hundred days after the filing of the appeal.[6] Relying on this constructive granting of the appeal, plaintiff argues that the Trust is entitled to an order requiring the defendant Mochi to revoke the special permit granted to Springstep. The vitality of the plaintiffs mandamus claim depends, of course, on a showing that the Trust filed a timely and valid appeal, entitling it to the benefit of the statute. The defendant argues that the plaintiff failed to perfect the appeal and that, as a result, the Board was not obligated to hold a hearing or take further action on the appeal. If the plaintiff did not perfect the appeal, the defendant argues, the claim for relief based on the constructive allowance of the appeal must be rejected. I find the defendant’s argument persuasive.
In analyzing whether the plaintiff filed a valid appeal, it is appropriate to begin with the governing statute which provides in relevant part as follows:
The petitioner shall file a notice of appeal specifying the grounds thereof, with the city or town clerk, and a copy of said notice, including the date and time of filing certified by the town clerk, shall be filed forthwith by the petitioner with the office or board whose order or decision is being appealed, and to the permit granting authority, specifying in the notice the grounds for such an appeal.
(Emphasis supplied.) As drafted, the statute clearly and unambiguously states that the appeal must be filed with three different municipal entities: 1) the City Clerk; 2) the office or board whose order or decision is being appealed, in this case with the defendant Building Commissioner; and 3) the permit granting authority, in this case the Board.[7] See Commonwealth v. Russ R., 433 Mass. 515, 520 (2001) (“When a statute is plain and unambiguous, we interpret it according to its plain meaning”). It is not disputed here that plaintiff filed his appeal with the City Clerk and the Building Commissioner. Whether the notice of appeal was filed with the Board, however, was vigorously disputed at trial. This factual issue was resolved against the plaintiff because the evidence did not support a finding that the plaintiff also filed its appeal *391 with the Board as required by the statute. Applying the plain language of the statute in a common sense manner, the only logical conclusion is that the plaintiff did not meet all the procedural prerequisites for a valid appeal.
This lapse is fatal to plaintiffs argument for application of the one hundred-day rule as contained in G.L.c. 40A, §15. Implicit in the legislative sanction for administrative delay is a requirement that the party who receives the benefit of the statute has taken all the steps necessary to trigger a duty to act. This notion of a corresponding obligation on the part of the party seeking the benefit of the one hundred-day rule is seen in the court’s articulation of the rule’s purpose as “ ‘to induce the board to act promptly’ when it acts routinely in its administrative capacity.” Nasca v. Board of Appeal of Medway, 27 Mass.App.Ct. 47, 49 (1989), citing Capone v. Zoning Board of Appeals of Fitchburg, 389 Mass. 617, 623 (1983). Accepting the stated purpose of the rule, a board cannot be held accountable under G.L.c. 40A, §15 for not acting on an appeal that never was filed in the first place. The rule simply does not apply where, as here, the failure to act is not the fault of the administrative agency. The failure to satisfy the prerequisite of filing with the Board necessarily means that the Board was relieved of any obligation to hold a hearing or otherwise act on the appeal. And it follows as well that if the Board was not obligated to hold a hearing or act on the appeal, there is no legal basis for the constructive allowance of the appeal.
Perhaps anticipating a finding that its appeal was not filed in precise accordance with the statute, the plaintiff argues in the alternative that the statute does not actually require the filing of the appeal with the Board and that the Board’s failure to act, nonetheless, allows a constructive granting of the appeal. This argument fails as well.
In arguing against the interpretation of the statute in accordance with its plain language, the plaintiff attempts to create ambiguity, a basis for going beyond the plain language of the statute, where none exists. The plaintiff begins its attack by asserting that the directive to file the notice of appeal with the Board as the permit granting authority “makes no sense at all” and that it is “mere surplusage . . . inadvertently retained from the earlier version of the statute.” This court cannot assume inadvertence or error on the part of the legislature. “The legislature is presumed to be aware of existing statutes when it amends a statute or enacts a new one.” Commonwealth v. Russ R., 433 Mass. at 520. Even if as plaintiff suggests, the legislature erred in failing to reconcile different versions of the statute, the correction of this error is a matter entirely within the purview of the legislature. Moreover, the case cited by the plaintiff, Intriligator v. City of Boston, 395 Mass. 489 (1985), does not support its position that a departure from the well-settled principles of statutory interpretation is justified in the circumstances of this case. In Intriligator, the court accepted that it may be proper in some cases to relax the rule favoring a literal interpretation of words in a statute. The particular situation compelling that approach in Intriligator was an ambiguity as to the reach of G.L.c. 258, the newly enacted Tort Claims Act. Id. at 492. No such ambiguity exists here where the language of the statute clearly and unambiguously sets out the requirements for perfecting an appeal.
Nor is this a case where the statute is internally inconsistent or the plain language of the statute compels an absurd or unreasonable result. Absent these circumstances, judicial tinkering with the plain meaning of a statute to allow a preferred outcome is strongly disfavored. Schultz v. Grogean, 406 Mass. 364, 366, n. 4 (1990) (“We may alter an interpretation but we may not ignore the plain language of a statutory provision").
Plaintiff also argues that the statutory requirement to file the appeal with the Board is not jurisdictional and, therefore, this lapse is not fatal to the appeal. Though our courts have come to disfavor harsh or rigid interpretations of the rules for appellate review of administrative matters when the offending lapse is minor, Schulte v. Director of the Division of Employment Security, 369 Mass. 74, 78-79 (1975), not every lapse is excused. “Sloppiness in following a prescribed procedure for appeal is not encouraged or condoned, but at the same time a distinction is taken between serious missteps and relatively innocuous ones.” Id. at 79. A court’s willingness to excuse a parly’s failure to follow the letter of the law depends in large part on the nature and importance of the appellant’s error. A court is obliged to “consider how far (the lapse) [has] interfered with the accomplishment of the purposes implicit in the statutory scheme and to what extent the other side can justifiably claim prejudice.” Id. at 80. For example in Cohen v. Board of Registration, 347 Mass. 96 (1964), the Court excused the plaintiffs failure to give notice to potential interveners because compliance with that step was not within the plaintiffs control. Likewise in Pierce v. Board of Appeals of Carver, 369 Mass. 804, 811 (1976), the court allowed the appeal to proceed in spite of a two-day delay in effecting service on the defendant abutter because the minimal delay in service, as opposed to filing, caused no prejudice to the defendant’s rights. No such equitable considerations excuse the plaintiffs noncompliance with the filing requirements of the statute in this case. Unlike Cohen, nothing, other than the plaintiffs own lack of attention to the requirements of the statute, prevented the Trust from filing a copy of the appeal with the Board as required by the statute. Nor can it be said that the failure to file with the Board is a minor lapse on a par with the failure to effect timely service of a timely filed appeal as in Pierce.
Finally, I consider as suggested by Schulte, if the lapse has “interfered with the accomplishment of the *392 purposes implicit in the statutory scheme and to what extent the other side can justifiably claim prejudice.” Here the plaintiff seeks to exact a price that a Board is held to pay only when that Board chooses inaction at the expense of a party who has met his obligations under the statute. As discussed above, overlooking the plaintiffs lapse does not advance the statutory purpose of preventing undue administrative delay. Also, the prejudice to the defendant and Springstep, an innocent third party, that inevitably results from excusing the Trust’s lapse is substantial. The building already has been constructed. On the other hand, excusing the plaintiffs lapse does not serve an equitable imperative such as preserving an otherwise meritorious appeal. It is hardly equitable in the sense urged by Schulte to excuse the plaintiffs lapse where the merit of its appeal was marginal at best.[8] Plaintiffs argument in its appeal as to the lack of notice is plainly frivolous. Plaintiff never provided the City with a change of address and cannot now be heard to complain that the Trust did not receive notice of the hearing. Though the facts underlying the plaintiffs parking claim did not come into play directly in this case, evidence offered by the defendant suggests that the plaintiff would not likely prevail in its attack on the Ciiy’s compliance with the applicable parking regulations. In conclusion, the required balancing of the interests required by Schulte is not achieved by allowing a noncompliant party the benefit of the statute and I decline to do so.

ORDER

For the reasons states above, the plaintiffs petition for a writ of mandamus is dismissed. It is therefore ORDERED that judgment enter for the defendant.

Neither party established the date of Springstep’s purchase of the property.

Fleming's testimony was evasive when he was asked on cross examination about the timing and substance of this conversation. Nonetheless, I infer that this conversation occurred prior to the hearing on the special permit and that the Trust, through its agent Fleming, had actual notice of Springstep’s plans. It would have served no purpose for Springstep to inform the Trust of its plans after the hearing. Also, I infer that the Trust was informed of the nature of Springstep’s construction plans.

The Community Development Authority is constituted as the “Planning Board” under Sec. 2-363, Ordinances of the City of Medford with all the powers as duties as set forth in G.L.c. 41, §81A et seq.

Their efforts failed; the building has now been completed.

Whether Fleming filed the appeal with the Board is the central factual issue in this case. Fleming testified that on February 12, 2002, he delivered a copy of the appeal to John O’Heam, the agent for the Board, who then instructed Fleming to serve a copy on the City Solicitor. I credit O’Hearn’s denial that he received a copy of the notice of appeal from Fleming. Fleming sent a copy of the appeal to the City Solicitor with a cover letter stating that the appeal had been filed with the City Clerk and delivered in hand to Mochi. Fleming made no mention of having filed a notice of appeal with O’Hearn or the Board.

The statute provides in relevant part as follows: “The decision of the board shall be made within one hundred days after the date of the filing of an appeal, application or petition .. . Failure by the board to act within said one hundred days or extended time, if applicable, shall be deemed to be the grant of the appeal, application or petition.”

Under G.L.c. 40A, §1A, the “permit granting authority shall mean the board of appeals or zoning administrator.”

Though it is ordinarily not appropriate to consider the merits of the appeal where a party is claiming the benefit of the one hundred-day rule in G.L.c. 40A, §15, fifth para., I review the matter here only because prejudice to a party is relevant to whether the court should excuse a particular procedural defect. Schulte at 80. In that sense, the prejudice to the plaintiff in not excusing the procedural defect claimed by the defendant and the prejudice to the defendant in overlooking the defect are relevant considerations.